Dale B. KIMSEY, Appellant,

v.

Roy Edwin KIMSEY, Jr., Appellee.

No. 08–95–00279–CV.

Court of Appeals of Texas,
El Paso.

March 12, 1998.

J. Michael Cunningham, Kerr & Ward, Midland, for appellant.

Bill G. Alexander, Law Offices of Bill Alexander, P.C., John W. Cliff, Jr., John W. Cliff, Jr., P.C., Odessa, for appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

Dale B. Kimsey (Wife) and Roy Edwin Kimsey, Jr. (Husband) both appeal from a final decree of divorce following a jury trial. Wife alleges post-trial error in eight points of error. Husband raises six points of error challenging the legal and factual sufficiency of the evidence to support a reimbursement award and one point of error alleging that the trial court's division of property constitutes an abuse of discretion. We modify the judgment in certain respects, vacate other portions, and remand for further proceedings in accordance with this opinion. The remainder of the judgment, as modified, is affirmed.

### SUMMARY OF THE CASE

The Kimseys married on June 19, 1975. They separated in July 1992 and Wife filed a petition for divorce. The parties have one child who attained majority during the pendency of the divorce. The case was tried to a jury from May 1 through May 12, 1995. Pertinent to this appeal, the jury found that the community estate was entitled to reimbursement for improvements made to two

parcels of real estate owned by Husband's separate estate in the amount of $185,000 and $392,670. The trial court rendered a decree of divorce on July 19, 1995. Complaining of numerous aspects of the judgment as being vague and incapable of implementation or enforcement, Wife filed a motion to modify the judgment. Husband filed a motion for new trial alleging, among other things, that the evidence is legally and factually insufficient to support the jury's reimbursement findings. The trial court overruled those motions and both parties timely perfected appeal.

## WIFE'S POINTS OF ERROR

### Judgment for Attorney's Fees

■ In Point of Error No. One, Wife contends that the trial court erred in awarding judgment against her and in favor of her trial attorneys for fees incurred in their representation of her. Specifically she alleges that there are no pleadings to support this award. Each party sought an award of attorney's fees against the other party, and this issue was submitted to the jury. The jury determined, however, that the parties should pay their own attorney's fees. The trial court ordered Wife to pay her attorney's fees in the sum of $42,734 and ordered Husband to pay his attorney's fees in the sum of $67,542.90. The court further awarded a money judgment to the trial attorneys against their respective clients. Since the entry of this judgment, Wife's trial attorneys have made application for a turnover order since Wife failed to post a supersedeas bond. Husband concedes that the trial court had discretion to order both parties to each pay their own attorney's fees as part of the overall division of the marital estate, but it lacked authority to grant judgment against Wife in favor of her attorneys. See Douthit v. Anderson, 521 S.W.2d 127, 128 (Tex.Civ.App.—Dallas 1975, no writ)(divorce court had no authority to make a valid adjudication between attorney and client with respect to attorney's fees in the absence of any pleadings to support such an award; allegations in petition that wife had been compelled to hire an attorney and had agreed to pay a reasonable fee and which prayed for judgment against husband did not invoke court's jurisdiction to decide amount of fee as between wife and her attorney). Accordingly, Wife's first point of error is sustained and the judgment is reformed to delete the provisions which award judgment for attorney's fees to the trial attorneys for both parties. See TEX.R.APP.P. 43.2(b); Beavers v. Beavers, 675 S.W.2d 296, 300 (Tex. App.—Dallas 1984, no writ)(divorce decree modified to delete unauthorized award of attorney's fees).

### Unenforceability of the Divorce Decree

In Points of Error Nos. Two through Six and in Point of Error No. Eight, Wife challenges certain aspects of the judgment on the ground that it is so vague as to be incapable of implementation or enforcement. Husband does not address the merits of any of Wife's contentions, but simply argues that the trial court is the "more appropriate forum" in which to raise these complaints, and that Wife must first attempt to enforce the decree before seeking clarification. We disagree.

■ As a general rule, a judgment must be sufficiently definite and certain to define and protect the rights of all litigants, or it should provide a definite means of ascertaining such rights, to the end that ministerial officers can carry the judgment into execution without ascertainment of facts not therein stated. Stewart v. USA Custom Paint & Body Shop, Inc., 870 S.W.2d 18, 20 (Tex. 1994). A divorce decree must delineate the terms of compliance in clear, specific, and unambiguous terms so that the parties will readily know exactly what duties are imposed on them. Smith v. Rabago, 672 S.W.2d 38, 40 (Tex.App.—Houston [14th Dist.] 1984, no writ). The language of the decree should inform the parties of their obligations without calling on them for inferences or conclusions about which persons might well differ. Ex parte Slavin, 412 S.W.2d 43, 44–45 (Tex. 1967). When a divorce decree is not a consent decree or agreed judgment, the normal rules applicable to the construction of judgments apply to its interpretation. Harvey v. Harvey, 905 S.W.2d 760, 763–64 (Tex.App.— Austin 1995, no writ); see Biaza v. Simon, 879 S.W.2d 349, 355 (Tex.App.—Houston [14th Dist.] 1994, writ denied). Thus, where

a decree is unambiguous, the trial court has no authority to issue an order altering or modifying the original disposition of property. *Harvey,* 905 S.W.2d at 764; *Pierce v. Pierce,* 850 S.W.2d 675, 679 (Tex.App.—El Paso 1993, writ denied). If the property division in the original divorce decree is ambiguous, however, or not specific enough to be enforceable by contempt, the court may enter a clarifying order to enforce compliance with the original division of property. *Harvey,* 905 S.W.2d at 764; *Pearcy v. Pearcy,* 884 S.W.2d 512, 514 (Tex.App.—San Antonio 1994, no writ); *see* TEX.FAM.CODE ANN. § 9.006(a)(Vernon Pamph.1998) (clarification order in connection with enforcement action); TEX.FAM.CODE ANN. § 9.008(b) (clarification order in connection with contempt action). While the Family Code authorizes the trial court to clarify its judgment, it does not prohibit our review of Wife's complaints that the judgment is vague and unenforceable, nor is there any authority which suggests that an enforcement action is a prerequisite to raising a complaint on appeal. Further, appellate review is appropriate here since Wife presented her complaints about the judgment to the trial court in post-trial motions, and those complaints were overruled. Therefore, we will review the merits of Wife's contentions.

## IRS OBLIGATIONS

In Point of Error No. Two, Wife alleges that the portion of the judgment pertaining to the payment of federal income tax obligations is vague and incapable of implementation. Within the body of this same point of error, she also alleges that the trial court abused its discretion in ordering her to pay one-half of the federal income tax liability because she did not have control of the income or access to the documents necessary to file tax returns for the tax years 1990 through 1995. We note at the outset that the Kimseys have not filed a federal income tax return since 1989. We further note that there was no evidence presented with regard to the parties' potential tax liability. As a result, the trial court determined that the tax liability, if any, would be divided equally between the parties. Without knowing the extent of the liability, or the likelihood of a refund, we are unable to determine whether the equal division of liability so skewed the overall division of the community estate as to constitute a manifest abuse of discretion.

Turning our attention to the remaining argument found in this point of error, the provision pertaining to the preparation of the parties' federal income tax returns and payment of any taxes owed reads as follows:

> The Court finds the parties separated on or about July 1, 1992 and that Federal Income Tax has not been filed or paid since 1989. The Court therefore ORDERS Petitioner and Respondent to each get their own tax preparer and file all past due taxes consistent with the rules and regulations of the Internal Revenue Service. In the event the two tax preparers cannot agree, the tax preparers for the parties shall appoint a neutral third party tax preparer to arbitrate the differences.

In her post-judgment motion, Wife requested that the trial court clarify this portion of its judgment and she attached a suggested form found in the Texas Family Law Practice Manual. In its findings of fact and conclusions of law, the trial court found that both parties had the benefit of the parties' income both prior to the filing of the divorce petition (July 1, 1992) and during the pendency of the divorce in 1992, 1993, and 1994 by virtue of Husband's payment of expenses, child support, and temporary support to Wife. Neither the judgment nor the court's findings address the tax liability of the parties for the year of divorce, 1995.

The trial court correctly found that income tax liability is a matter of federal law and controlled by the Internal Revenue Code. State law, however, controls whether income is separate or community property. *United States v. Mitchell,* 403 U.S. 190, 91 S.Ct. 1763, 29 L.Ed.2d 406 (1971); *Hopkins v. Bacon,* 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249 (1930). The general rule is that any income that is characterized by Texas law as community income is taxed one-half to each spouse; that is, the community income of both spouses is combined and half the total is included in each spouse's gross income, along with any separate income of that spouse.

Section 66 of the Internal Revenue Code provides that effective for tax years beginning after 1980, the requirement that each spouse report one-half of the other's income is eliminated if certain conditions are met, one of which is that no portion of the earned income was transferred between the spouses. Here, the trial court specifically made a finding of fact that both parties had the benefit of the income by reason of the expenses, child support, and spousal support paid by Husband during the pendency of the divorce. Wife does not challenge this finding on appeal.

While the trial court can determine whether the parties will file a joint return or as married filing separately for years preceding the divorce, the court cannot alter the means of reporting income. It does have the discretion to apportion the *payment* of taxes as between the parties. A joint return must include all income, exemptions, and deductions of both spouses. Generally, both spouses are jointly and severally liable for the tax due on a joint return. Treas. Reg. § 1,6013–4(b). Thus, a spouse may be liable for the entire tax liability although the income was totally earned by the other spouse. If a husband and wife file as married filing separately, each is liable only for the tax due on his or her own return. *See Edith Stokby v. C.I.R.*, 26 T.C. 912, 1956 WL 725(A)(1956).

Generally if husband and wife are separated, they are considered married for the entire year if no final decree of divorce has been entered by the last day of the tax year. Treas. Reg. § 1.6013–4. If they are considered married, they may file jointly or as married filing separately and they may file a joint return even if one had no income or deductions. 26 U.S.C.A. § 6013; Treas. Reg. § 1.6013–1(a)(1). The difficulty here is that for the years prior to the year of divorce, the trial court made no order as to whether the parties are to file jointly or as married filing separately. As for the year of divorce, if the final decree is obtained on or before the last day of the tax year, the parties are considered unmarried and cannot

file a joint return. 26 U.S.C.A. § 7703(a)(West 1989). As a result, each spouse is still liable for taxes on half of the community income for the part of the year before dissolution.

■ Point of Error No. Two is sustained. On remand, the tax provisions should be drafted to specify whether the parties are to file joint returns for the years preceding the year of divorce. *See e.g.*, 2 TEXAS FAMILY LAW PRACTICE MANUAL 10.J.1(a) and (b)(2d ed.1996). Since the parties have not filed returns for the years 1989 through 1994, the decree should also provide a method of preparation of the returns for the years prior to divorce and should make provision for the exchange of information between the parties or a third party tax preparer. Finally, the decree should contain provisions addressing the eventuality of a tax refund for any of the tax years as well as the preservation of all financial records relating to the community estate and access to those records by the parties. *See e.g.*, 2 TEXAS FAMILY LAW PRACTICE MANUAL 10.J.5 and 10.J.6 (2d ed.1996).

## REIMBURSEMENT

In Points of Error Nos. Three and Five, Wife contends that the portion of the divorce decree awarding her judgment in the sum of $296,000 for reimbursement for community improvements to Husband's separate real property is unenforceable and inadequately secured.[1] She complains that this portion of the decree is unenforceable because it fails to define default, to provide for a method of calculating interest, or to provide for a specific place of payment. She also maintains that the judgment is inadequately secured because Husband was not required to execute a deed of trust. After awarding judgment to Wife in the sum of $296,000, the decree provides:

> To secure such judgment, Dale B. Kimsey is hereby awarded an equitable lien against the following property:

1. In Point of Error No. Five, Wife asserts that two separate portions of the decree are ambiguous because they do not specify a place for payment of the principal and interest in connection

with the $296,000 judgment or the $39,467 judgment. We will separately address each of these contentions and will refer to the first as Five(a) and to the second as Five(b).

a. The house and five acres known as One Kimsey Way and being further described as being located in Section 4, Block X, H.P. Hilliard Survey, Midland County, Texas. Said equitable lien shall be in the amount of $100,000.00.

b. 22.15 acres of land located in Section 4, Block X, H.P. Hilliard Survey, Midland County, Texas. Said equitable lien shall be in the amount of $196,000.00. Said $296,000.00 shall bear interest at the rate of 6 per cent per annum from the date this Judgment is signed. Respondent shall pay the sum of $1,000.00 per month commencing August 1, 1995 with a like $1,000.00 payment on the 1st of each month thereafter until paid in full. Said $1,000.00 monthly payments shall be credited toward the principal amount of $296,-000.00. Interest shall be paid on a yearly basis on or before December 15 commencing 1995 and continuing on December 15 each year thereafter until paid in full. In the event of default, Petitioner is hereby given the right to accelerate payments, demand that the principal and interest be paid in full and request a judicial foreclosure of her equitable liens.

█ Whenever a party is to make some payment after the date of divorce, the decree should specify the dates, time, and location of the payment. *See Ex parte Carpenter,* 566 S.W.2d 123, 124 (Tex.Civ.App.—Houston [14th Dist.] 1978, orig. proceeding)(requirement that party "timely" pay for any medical, dental, and hospital charges is imprecise and subjective); *see also Ex parte Fernandez,* 645 S.W.2d 636, 638 (Tex.App.—El Paso 1983, orig. proceeding)(contempt order was not vague in its use of word "immediately" since judge obviously meant right at that time, and payment into "Registry of the Court" was not vague for lack of address, since heading on order was sufficiently unambiguous to place former husband on notice as to place of payment). Although the decree sets forth the due dates for the payment of principal and interest, it does not provide for a place of payment. On remand, this deficiency can be easily corrected.

█ We also agree with Wife that the provisions of the decree pertaining to the calculation of interest on the judgment awarded for reimbursement is ambiguous. Pursuant to Sections 304.003 and 304.006 of the Texas Finance Code, all judgments of this state earn interest, compounded annually, at the legal rate. Tex.Fin.Code Ann. §§ 304.003, 304.006 (Vernon Pamph.1998). This method of calculating interest applies to money judgments for amounts awarded as reimbursement. *Gutierrez v. Gutierrez,* 791 S.W.2d 659, 666 (Tex.App.—San Antonio 1990, no writ). By erroneously providing for a rate of interest other than the legal rate, it cannot be ascertained whether the decree requires simple or compound interest. On remand, this provision should be re-drafted to provide for interest at the legal rate, compounded annually, in accordance with Sections 304.003 and 304.006.

█ Turning to Wife's complaint that the decree fails to define default, we conclude that the decree in this regard is unambiguous. A commonly accepted legal definition of "default" is failure to discharge an obligation, e.g., to pay interest or principal on a debt when due. Black's Law Dictionary 376 (5th ed.1979). This provision of the decree imposes the obligation to make principal and interest payments on specific dates. Therefore, we construe the decree as providing that default occurs if Husband fails to make a payment of either principal or interest when due.

█ Finally, we consider Wife's argument that the trial court abused its discretion in failing to require Husband to execute a deed of trust to formalize the equitable lien. When dividing marital property on divorce, a trial court may impose an equitable lien on one spouse's separate real property to secure the other spouse's right of reimbursement for community improvements to that property. *Heggen v. Pemelton,* 836 S.W.2d 145, 146 (Tex.1992), *citing e.g., Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620, 627 (1935); *Smith v. Smith,* 715 S.W.2d 154, 160 (Tex.App.—Texarkana 1986, no writ); *Eggemeyer v. Eggemeyer,* 623 S.W.2d 462, 466 (Tex.App.—Waco 1981, writ dism'd), *on remand from,* 554 S.W.2d 137 (Tex.1977). If the judgment is not paid, the party awarded the judgment

secured by the equitable lien has the right to foreclose and sell the property. *Day v. Day*, 610 S.W.2d 195, 198 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.). An equitable lien arises when the divorce decree is rendered, and because it is not a judgment lien, its existence is not dependent on the filing of the abstract of judgment. *Id.* at 198.

If Husband defaults on his obligations under this provision of the decree, Wife may seek judicial foreclosure of the equitable lien. We understand Wife to argue, however, that the trial court abused its discretion by failing to require Husband to execute a promissory note evidencing the debt and a deed of trust granting to Wife the right to non-judicial foreclosure and sale of the property in the event of default. Execution of a deed of trust formalizes the equitable lien and allows for prompt enforcement in case of default. *Magallanez v. Magallanez*, 911 S.W.2d 91, 94 (Tex.App.—El Paso 1995, no writ); *Mullins v. Mullins*, 785 S.W.2d 5, 11 (Tex.App.—Fort Worth 1990, no writ). While judicial foreclosure of an equitable lien may be an adequate means of enforcement in an ordinary case, the record before us reflects that Husband repeatedly resisted the trial court's temporary orders to the extent that Wife was forced to expend significant time and money in enforcing her rights under those orders. Under these facts, we conclude that the trial court abused its discretion in restricting Wife's ability to enforce the judgment and by failing to require Husband to execute a promissory note and deed of trust. Points of Error Nos. Three and Five(a) are sustained.

### AWARD OF $39,467

In Point of Error No. Five(b) and Six, Wife contends that the portion of the divorce decree awarding her the sum of $39,467 is unenforceable. The decree states, in pertinent part, that:

[Wife] is hereby awarded, as her sole and separate property, the following:

\* \* \* \* \* \*

14. The sum of $39, 467.00 from [Husband] which shall bear interest at the legal rate from date of Judgment and which is payable on demand.

The court's findings of fact indicate that it awarded this sum of money to Wife to compensate her for Husband's failure to pay interim attorney's fees as ordered in the Third Amended Temporary Orders. Although this provision does not order Husband to pay the money to Wife by a specific date and time, it provides that the judgment is payable on demand. This is sufficiently definite and unambiguous. *See Ex parte Fernandez*, 645 S.W.2d at 638. The decree fails, however, to provide for a specific place of payment. Given the provision that the money award "shall bear interest at the legal rate," it appears that the trial court intended to reduce this money award to judgment. In its present form, however, the language of the provision is insufficient to accomplish this purpose. Points of Error Nos. Five(b) and Six are sustained.

### ENERGROWTH STOCK

In Point of Error No. Eight, Wife challenges the portion of the decree awarding her the Energrowth, Inc. stock "held in her name" as vague and indefinite.[2] In addition to arguing that the decree is deficient for failing to award her a specific number of shares, Wife complains that the decree should have instructed Husband to make periodic accountings to Wife and to distribute or make payments to her. The trial court made no findings of fact or conclusions of law with respect to the Energrowth stock award. We agree that the award of stock held in Wife's name is indefinite and the decree should award Wife a specific number of shares of Energrowth stock or reference a particular stock certificate. The remaining relief which Wife seeks to obtain is not part of the trial court's obligation to make an equitable division of the community estate, but instead is related to the enforcement of

2. The court specifically awarded Husband 50,000 shares of Energrowth stock. At least according to the bankruptcy court order confirming plan of reorganization, stock certificate 002 representing 50,000 shares of Energrowth stock was the sole management community property of Wife and not part of Husband's debtor estate.

rights which Wife has as a stockholder. Point of Error No. Eight is sustained in part.

### EXECUTION OF DOCUMENTS

■ In Point of Error No. Four, Wife alleges that the decree fails to instruct Husband to execute and deliver applicable documents in connection with the $296,000 judgment discussed in Point of Error No. Three, in connection with the $39,467 judgment discussed in Point of Error No. Six, and in connection with delivery of the Energrowth, Inc. stock certificates discussed in Point of Error No. Eight. The decree should include a provision regarding the execution of instruments, and the transfer and delivery of property consistent with our resolution of Points of Error Nos. Three, Six, and Eight. Point of Error No. Four is sustained.

### INTERIM ATTORNEY'S FEES

In Point of Error No. Seven, Wife asserts that the trial court erred in eliminating an award of interim attorney's fees without prior notice. In its Third Amended Temporary Order, the trial court ordered Husband to pay $50,000 into the registry of the court as a deposit for payment of Wife's past, current, and future attorney's fees. Husband did not obey this order and the trial court adjudicated him to be in contempt. Wife incurred reasonable attorney's fees in the sum of $42,734. Wife did not submit any issues to the jury pertaining to interim attorney's fees. In the divorce decree, however, the trial court included the following language:

> IT IS A FURTHER ORDER OF THIS COURT that any responsibility owed by Roy E. Kimsey, Jr. under the Third Amended Temporary Orders dated July 24, 1994 is hereby discharged.[3]

■ Wife argues that the trial court's discharge of the obligation to pay the interim attorney's fees without prior notice violated her right to due process. She cites no authority for this argument. Consequently, nothing is presented for review. TEX. R.APP.P. 38.1(h); *Venetoulias v. O'Brien*, 909 S.W.2d 236, 242 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd by agr.); *Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919, 927 (Tex.App.—Fort Worth 1994, writ denied). Even if this contention were sufficiently briefed, Wife has failed to establish that she has been injured by the discharge of the fees without notice since the court awarded her judgment against Husband in the sum of $39,467 to compensate her for his failure to pay in full the interim fees. Point of Error No. Seven is overruled.

## HUSBAND'S POINTS OF ERROR

### *Sufficiency of Evidence to Support Reimbursement Awards*

In Points of Error Nos. One, Two, and Three, Husband challenges the legal and factual sufficiency of the evidence to support the jury's finding that the community estate has a right of reimbursement in the sum of $185,000 for improvements made to Husband's separate real property located at One Kimsey Way. In Points of Error Nos. Four, Five, and Six, Husband attacks the legal and factual sufficiency of the evidence to support the jury's finding that the community estate was entitled to reimbursement in the sum of $392,670 for improvements made to Husband's separate real property located adjacent to One Kimsey Way.

### STANDARD OF REVIEW

■ A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. There are basically two separate "no evidence" claims. When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established as "a matter of law". When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding". See Creative Manufacturing, Inc. v. Unik, 726 S.W.2d 207 (Tex.App.—Fort Worth 1987, no writ). The standard of re-

---

3. Because the obligation for which Husband had been held in contempt had been discharged, the validity of the contempt order became moot. *Ex parte Kimsey*, 915 S.W.2d 523, 527 (Tex.App.—El Paso 1995, orig. proceeding).

view requires a determination by the appellate court as to whether, considering only the evidence and inferences that support a factual finding in favor of the party having the burden of proof in a light most favorable to such findings and disregarding all evidence and inferences to the contrary, there is any probative evidence which supports the finding. Garza v. Alviar, 395 S.W.2d 821, 823 (Tex.1965); Southwest Craft Center v. Heilner, 670 S.W.2d 651 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); Terminix v. Lucci, 670 S.W.2d 657 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); Dayton Hudson Corp. v. Altus, 715 S.W.2d 670 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). If more than a scintilla of evidence supports the finding, the "no evidence" point fails. *Tseo v. Midland Am. Bank,* 893 S.W.2d 23, 25 (Tex. App.El Paso, 1994, writ denied); *Hallmark v. Hand,* 885 S.W.2d 471, 474 (Tex.App.—El Paso 1994, writ denied).

■ "Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. When the party having the burden of proof complains of an unfavorable finding, the point of error should allege that the findings "are against the great weight and preponderance of the evidence". The "insufficient evidence" point of error is appropriate only when the party without the burden of proof on an issue complains of the court's findings. Neily v. Aaron, 724 S.W.2d 908 (Tex.App.—Fort Worth 1987, no writ).

■ The test for factual insufficiency points is set forth in In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951). In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. It is for the jury to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *Carrasco v. Goatcher,* 623 S.W.2d 769, 772 (Tex. App.—El Paso 1981, no writ). The jury's finding should be sustained if there is some provative evidence to support it and provided

it is not against the great weight and preponderance of the evidence. *Id.*The parlance used by the courts of appeals is that such a finding "shocks the conscience" or that it is "manifestly unjust", limited by such phrases as "the jury's determination is usually regarded as conclusive when the evidence is conflicting," "we cannot substitute our conclusions for those of the jury," and "it is the province of the jury to pass on the weight or credibility of a witness's testimony." See, e.g., Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 30 (Tex.1994); *Beall v. Ditmore,* 867 S.W.2d 791, 795 (Tex.App.—El Paso 1993, writ denied). Thus, we cannot substitute our judgment for that of the fact finder even if we find a fact contrary to that found by the jury, provided the jury finding is supported by provative evidence and is not against the great weight and preponderance of the evidence. If, however, the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained.

OVERVIEW OF REIMBURSEMENT CLAIMS

■ A claim for reimbursement of funds expended by an estate for improvements to another estate is to be measured by the enhancement value to the benefitted estate. *Anderson v. Gilliland,* 684 S.W.2d 673, 675 (Tex.1985). This measurement is to be applied whether the claim for reimbursement is based on funds expended for payment of a purchase money debt or for a capital improvement to another estate. *Penick v. Penick,* 783 S.W.2d 194, 197 (Tex.1988). Offsetting benefits to the paying estate must be considered. *Id.* The party claiming the right of reimbursement has the burden of proof. *Jensen v. Jensen,* 665 S.W.2d 107, 110 (Tex. 1984); *Vallone v. Vallone,* 644 S.W.2d 455, 459 (Tex.1982).

■ Reimbursement is an equitable claim. *Penick,* 783 S.W.2d at 197; *Magill v. Magill,* 816 S.W.2d 530, 535 (Tex.App.—Houston [1st Dist.] 1991, writ denied). As such, a court of equity is bound to look at all facts and circumstances to determine what is fair, just, and equitable. *Penick,* 783 S.W.2d at 198; *Magill,* 816 S.W.2d at 535. The equitable nature of a claim for reimburse-

ment allows for consideration of offsetting benefits. *Jensen,* 665 S.W.2d at 109; *Magill,* 816 S.W.2d at 535. However, great latitude must be accorded to the trial court in applying equitable principles to value such a claim, for it is not just a balancing of the ledgers between competing marital estates. *Penick,* 783 S.W.2d at 198; *Magill,* 816 S.W.2d at 535. The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as the discretion exercised by a trial court in making a just and proper division of the community estate. *Penick,* 783 S.W.2d at 198.

## The Jury Charge

The trial court charged the jury as follows: A claim for reimbursement for funds expended by an estate to pay debts, taxes, interest, or insurance for the property of another estate is measured by the amount paid, less the value of any related benefit received by the paying estate.

A claim for reimbursement of funds expended by an estate for improvements to real property of another estate is measured by the enhancement in value to the receiving estate resulting from such expenditures, less the value of any related benefit received by the paying estate.

A claim for reimbursement to the community estate for the spouses' time, toil, talent, or effort expended to enhance a spouse's separate estate is measured by the value of such community time, toil, talent, and effort other than that reasonably necessary to manage and preserve the separate estate, and for which the community did not receive adequate compensation. From the value of the time, toil, talent, and effort expended is to be subtracted the compensation paid to the community in the form of salary, bonuses, dividends, and other fringe benefits.

The trial court further instructed the jury that the burden was on the spouse seeking

reimbursement to prove each element of the claim by a preponderance of the evidence. The jury found that the community estate was entitled to reimbursement in the sum of $185,000 in connection with a 5–acre tract of separate real property and in the sum of $392,670 in connection with an adjoining 22–acre tract. The jury also found that the reasonable market value less the community improvements of each tract was $100,000 and $332,250, respectively.[4] The trial court, however, disregarded the jury's findings of fair market value. The court awarded judgment to Wife in the amount of $296,000 for her share of the community's award of reimbursement. Of this $296,000, $100,000 represented reimbursement on the 5–acre tract, and $196,000 constituted a reimbursement award on the 22–acre tract.

## Summary of the Evidence Presented

On March 5, 1975, Husband purchased 10 acres of land in Midland County, Texas for approximately $14,000 ($1,400 per acre). On June 17, 1975, he purchased an additional 30 acres of adjoining land for $70,000 ($2,333 per acre). The parties were married two days later. Husband made one payment of $20,000 prior to marriage, and paid the remainder of the $70,000 note after their marriage with community funds.

Husband sold 6.27 acres of these two tracts to Charles Tierce for $70,000. The Kimseys ultimately executed a homestead designation as to 27.35 acres, which is known as One Kimsey Way.[5] Of the 27.35 acres designated as homestead, the family residence was built on a 5–acre tract and an ostrich farm was built on the remaining 22–acre parcel.

### The Five Acre Tract

In 1977, the Kimseys borrowed $200,000 to build a 4,750 square foot home. The title policy was issued for $275,000. The unpaid balance of the mortgage was $143,127 at the

---

4. This question appears to ask for the fair market value of the raw acreage in an attempt to insure that any appreciation due to traditional market fluctuations was properly attributed to Husband's separate estate. Based on the jury findings, the 5–acre tract had a raw acreage value of

$20,000 per acre while the 22–acre tract had a value of roughly $15,000 per acre.

5. The record does not reflect the disposition of the remaining 6.38 acres of the original 40 acres.

time of trial. Roberta Aldridge, a real estate agent, estimated the fair market value of the 5–acre tract and residence to be between $350,000 and $425,000. She valued the five acres on which the home was situated at $15,000 per acre, adding that the home contributed to the value of the acreage. Other evidence showed that the fair market value of the 5–acre tract might range from as little as $11,164 to as much as $17,543 per acre.[6]

### THE OSTRICH FARM

Sometime in 1989, Husband started an ostrich farm on the 22–acre tract. Community funds were used for all of the improvements necessary for operation of the ostrich farm, namely, fences, pens, and an ostrich breeding house. Husband borrowed $50,000 to finance these improvements, which he valued at $60,420 on August 11, 1989. On that same date, and again on August 24, 1990, Husband estimated the fair market value of the combined acreage and improvements located at One Kimsey Way at $686,750. However, that estimate did not include the homestead residence which he listed separately with a market value of $400,000.

### EVIDENTIARY ANALYSIS

#### THE FIVE ACRE TRACT

With respect to Points of Error Nos. One through Three, Husband makes a two-part argument: (1) there is no evidence that the mortgage was paid with community funds; and (2) in the absence of evidence showing the current value of the land with and without improvements, there is no factual basis for the jury's determination that the community was entitled to reimbursement in the sum of $185,000. Husband concedes that the community expenditures to build the house enhanced the value of the property, but he reasons that since some of the increased value could be "natural accretion" due to market forces, the evidence is legally and factually insufficient.

 Husband's argument that there is no evidence that community funds were expended to pay the mortgage misses the

point. All property on hand at the dissolution of marriage is presumed to be community property. TEX.FAM.CODE ANN. § 3.003(a)(Vernon Pamph.1998). It is well established that debts contracted during the marriage are presumed to be on the credit of the community and thus are joint community obligations, unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction. *Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex.1975); *Morris v. Morris*, 894 S.W.2d 859, 863 (Tex.App.—Fort Worth 1995, no writ); *Jones v. Jones*, 890 S.W.2d 471, 475 (Tex.App.—Corpus Christi 1994, writ denied). By virtue of this community obligation, the community provided $200,000 in funds that were used to construct a home on Husband's separate property at One Kimsey Way. The fact that the note has not been fully repaid does not affect the community character of the funds realized from the loan. *Girard v. Girard*, 521 S.W.2d 714, 716 (Tex. Civ.App.—Houston [1st Dist.] 1975, no writ).

Citing *Padon v. Padon*, 670 S.W.2d 354 (Tex.App.—San Antonio 1984, no writ), Husband acknowledges that his 5–acre estate has been enhanced by some amount, but he argues that the evidence does not show the exact amount that the property has been enhanced as a result of community-financed improvements. In *Padon*, the parties expended approximately $50,000 on improvements for Mr. Padon's separate property residence which he had purchased during the marriage with separate funds of $89,900. The sole evidence of the enhanced value of the home was the testimony of Mr. Padon who stated that the fair market value of the home with the improvements and enhancement in value was $200,000. The trial court awarded Ms. Padon $50,000 to reimburse the community estate and her separate estate for the improvements made to the house. The San Antonio Court of Appeals found that Mr. Padon's testimony constituted some evidence that the expenditures increased the value of the house by some amount but it did not support the trial court's determination that the enhanced value attributable to the expen-

---

**6.** Tierce purchased the 6.27 acres in 1989 for $70,000, or $11,164 per acre. At the time of trial, Tierce had a contract to sell the same 6.27 acres for $110,000, or $17,543 per acre.

ditures exceeded the $50,000 that had been expended. *Padon,* 670 S.W.2d at 358.

■ *Padon* is distinguishable because there was no evidence there of the value of the property without the improvements. Here, there is some evidence of the value of the property both with and without the improvements. Evidence showing the value of the property without improvements and the value of the property with improvements is sufficient to sustain a finding as to the amount of the enhancement in value. *Smith v. Smith,* 715 S.W.2d 154, 157 (Tex.App.— Texarkana 1986, no writ). Using Aldridge's valuation of $15,000 per acre (more than ten times what Husband paid for it), the 5–acre tract without improvements would be valued at $75,000. After improvements made with community funds, the property has a fair market value of between $350,000 and $425,000. Depending on which view of the evidence the jury adopted, the enhanced value of the property is between $275,000 and $350,000. Since the jury found that the community estate was entitled to reimbursement in the sum of $185,000 for enhancement in value of the 5–acre tract, the jury presumably took into account the value of any related benefit received by the community estate. We conclude that the evidence is both legally and factually sufficient to support the jury's finding. Points of Error Nos. One through Three are overruled.

## THE OSTRICH FARM

■ With respect to Points of Error Nos. Four, Five, and Six, the evidence reflects that in 1975 Husband paid $2,333 per acre for the 22–acre tract. Based on the Triece purchase and contract to sell, the current fair market value of similar unimproved property located in the same area is $11,164 to $17,543 per acre. Thus, the jury could have found that the fair market value of the 22–acre tract without improvements is between $245,608 ($11,164 per acre) and $385,946 ($17,543 per acre). On more than one occasion, Husband filed financial statements estimating the fair market value of this same 22–acre tract and the 4–acre tract surrounding the residence at $686,750.[7] If the fair market value

of the 4–acre tract is subtracted from this estimate, the fair market value of the remaining 22–acre tract at issue is approximately $616,578 ($686,750 minus $70,172) to $642,094 ($686,750 minus $44,656). The fair market value includes, of course, the increased value of the raw acreage due to natural market fluctuations in addition to improvements. Giving Husband the benefit of the doubt, we reduce these valuations again for the increased value in the raw acreage. Valuing the raw acreage at $11,164 per acre, the 22–acre tract has a value, excluding improvements, of $245,608. Valued at $17,543, this value rises to $385,946. Subtracting the full increase in value of the raw acreage from Husband's sworn statements of fair market value, we arrive at the enhancement value as a result of the community financed improvements, which ranges from $230,632 to $396,486. In making its finding, the jury could have also considered that Husband used $50,000 in community funds to retire the debt incurred when he purchased this property. Taken in the light most favorable to the finding, the evidence is legally sufficient to support the jury's finding that the community estate was entitled to reimbursement in the sum of $392,670 for the enhancement in value of the 22–acre tract. Even when the evidence is viewed as required by the factual sufficiency standard, we are unable to conclude that the jury's finding is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. *Magill,* 816 S.W.2d at 535; *Girard,* 521 S.W.2d at 718. Points of Error Nos. Four, Five, and Six are overruled.

## *Just and Right Division*

■ In Point of Error No. Seven, Husband alleges that the trial court abused its discretion in making a division of the community estate that is so disproportionate as to be manifestly unjust. Husband complains that although he was awarded 62.2 percent of the community assets, he was awarded 96.5 percent of the community

7. The residence and the one acre on which it sat was separately valued at $400,000.

debts.[8] The trial court has wide discretion in dividing the marital estate of the parties. TEX.FAM.CODE ANN. § 7.001; *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985); *Capellen v. Capellen*, 888 S.W.2d 539, 543 (Tex. App.—El Paso 1994, writ denied). It is presumed that the trial court exercised its discretion properly, and the division will not be corrected on appeal unless a clear abuse of discretion is shown. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981); *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex.1974). The trial court's ultimate division need not be equal as long as it is equitable and the circumstances justify a disproportionate division. *Thomas v. Thomas*, 525 S.W.2d 200, 202 (Tex.Civ.App.— Houston [1st Dist.] 1975, no writ). In exercising its discretion, the trial court may consider many factors, including a disparity of incomes or of earning capacities, the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property. *Murff*, 615 S.W.2d at 699.

Husband claims that the trial court made a conclusion of law that the disproportionate division of property is justified based upon six factors. Our review of this conclusion of law reveals, however, that it pertains to the trial court's reasons for ordering Husband to pay the $296,000 reimbursement award in 296 payments of $1,000 each. The trial court did not make any findings of fact or conclusions of law pertaining to the disproportionate property division. Consequently, we must presume that the trial court took into consideration the entire circumstances of the parties in dividing their property. *Hourigan v. Hourigan*, 635 S.W.2d 556 (Tex.Civ.App.—El Paso 1981, no writ).

Husband and Wife are the same age and have somewhat similar educational backgrounds. However, there is a great disparity with respect to the relative earning capacities and abilities of the parties. At the time of trial, each party was fifty-nine years old. Wife attended college but did not obtain a degree. Instead, she married her first husband and began a family. Since the time of Wife's first marriage in the late 1950's through the conclusion of her marriage to Husband, she had little experience in working outside of the home. Husband, on the other hand, obtained a degree in business administration and completed one semester of a post-graduate program in petroleum engineering. After leaving school and active duty in the Army, Husband became self-employed in the oil and gas business in late 1958. Over the years, Husband was successful in his business ventures to the extent that in 1989, he had a net worth of $1.475 million. In October of 1992, however, Husband filed a chapter 11 petition for bankruptcy. He attributed the negative financial turnaround to several bad investments and judgments taken against him over a short period of time. Husband's separate estate is substantial, particularly when compared to that of Wife. Although the trial court imposed the vast majority of the community debts on Husband, the court also gave him a greater proportion of the community assets, including the assets related to his businesses and mineral and royalty interests located in several counties in Texas and New Mexico.[9] By virtue of his business experience in real estate and oil and gas operations, and the award of a greater share of the community assets, Husband has significantly greater future business opportunities than Wife and an ability to retire the debts. Because the circumstances of the parties support the trial

---

8. Husband has included in his brief a schedule of separate and community property, liabilities, and the ultimate division of property. According to these schedules, Wife's separate property estate has a value of $256,675, while Husband's separate property estate is valued at $936,880, excluding the reimbursement award to the community estate. Wife was awarded $493,515 in community assets and $54,234 in community liabilities. Husband was awarded $812,330 in community property assets, but assessed $1,503,992 in debts. As these numbers reflect, the parties had a negative community estate of a quarter of a million dollars ($1,305,845 in total community assets less $1,558,226 in community indebtedness equals a negative estate of -$252,-381).

9. The trial court valued these interests at $535,-613.

court's disproportionate division of the community estate, no abuse of discretion is shown. *See Conroy v. Conroy,* 706 S.W.2d 745, 748 (Tex.App.—El Paso 1986, no writ) (disproportionate division of community estate in favor of wife was not abuse of discretion where wife was forty-seven years old and had not worked outside of the home at any time during the twenty-four year marriage, husband had income in excess of $3,000 per month, wife had no income and poor prospects for any immediate alleviation of debt, wife assumed responsibility of child and mortgage on family home, and husband was at fault in breakup of the marriage); *Cluck v. Cluck,* 647 S.W.2d 338, 342–43 (Tex. App.—San Antonio 1982, writ dism'd)(award of bulk of community estate to wife not an abuse of discretion where wife had not been employed during the marriage and did not have promising employment prospects and husband was a successful attorney who received his professional practice in total). Point of Error No. Seven is overruled.

## CONCLUSION

Having sustained Wife's first point of error, we reform the judgment to delete the judgments for attorney's fees awarded to the parties' trial attorneys. Because we have sustained Wife's second, third, fourth, sixth, and eighth points of error, the portions of the judgment pertaining to those points are vacated and the cause is remanded to the trial court for a non-evidentiary hearing for the limited purpose of entering provisions consistent with this opinion. Having overruled the remaining points of error raised by both parties, we affirm the judgment as modified.