In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-06-084 CV


____________________



TROY REDEAUX, Appellant



V.



ALLISON D. REDEAUX, Appellee






On Appeal from the 317th District Court


Jefferson County, Texas


Trial Cause No. C-193,120






 MEMORANDUM OPINION 


 Troy Redeaux appeals from the court's property division in his divorce decree. He
contends the trial court abused its discretion by awarding Allison D. Redeaux a
disproportionate amount of the marital estate. We find the trial court did not abuse its
discretion and affirm the trial court's judgment.

Background

 Troy and Allison married in July of 1999. In 2004, Allison filed for a divorce. During
their marriage, they had one child, whose custody is not at issue in this appeal. In Allison's
petition for divorce, she asserted a "no fault" ground that the marriage was insupportable
"because of discord or conflict of personalities . . . that destroys the legitimate ends of the
marriage relationship and prevents any reasonable expectation of reconciliation." See Tex.
Fam. Code Ann. § 6.001 (Vernon 2006). 

 In her petition, Allison requested that the court divide the marital estate in a "just and
right" manner, and requested the court to confirm that some of her property was separate and
not a part of the community estate. Additionally, Allison requested that the court issue orders
for her protection and for the safety and welfare of the child as deemed necessary and
equitable. After finding that Troy committed family violence, the court entered a protective
order. 

 At the final divorce hearing, Allison testified that prior to her marriage to Troy, she
purchased the home in which the couple resided, and that title to the property was in her
name. Allison acknowledged that during their marriage Troy performed work on the home
that improved its value, including building a fence and painting the house. She also testified
that the supplies for the home improvements were purchased with the proceeds she received
from the settlement of her father's asbestosis claim. Troy testified that in addition to fencing
the yard and painting the house, he screened all of the windows and landscaped the yard. 
Troy testified that his home-improvement services were worth $10,000, although he provided
no other supporting documents regarding the value he placed on his services. Troy testified
that he spent money on the improvements, but also admitted that Allison paid for the bulk
of the supplies.

 Allison also testified that while married to Troy she purchased a Chevrolet Silverado
truck with the settlement proceeds from a lawsuit, and that she used her separate property to
pay for insurance on this truck. This Silverado was wrecked, and she purchased a second
Chevrolet Silverado with the insurance proceeds. The second Silverado's title listed both
Troy and Allison as owners. Troy contested Allison's claim and testified that Allison gave
him the first Silverado, and that he paid for the insurance for the truck. (1) Troy further testified
that the insurance proceeds they received as a result of the first Silverado's being wrecked
were paid to them jointly because the insurance was in both of their names. Allison recalled
that the check from the insurance company listed both of their names. While Allison agreed
that Troy primarily utilized the truck, she claimed that on occasion she too drove the truck.
Troy denied that Allison used the Silverado. 

 Troy testified that because of their marital problems, Allison's family vandalized the
Silverado. He stated that the vandalism caused $7,000 in damages and he supported his
testimony with the receipt for the truck's repairs. Troy testified that he paid a $500 insurance
deductible toward the repair expenses attributable to the vandalism of the Silverado. During
her cross-examination, Allison denied that she had any personal knowledge of the claim that
her family vandalized the truck. 

 The evidence at trial also addressed the community debt. Allison testified that the
credit cards were in her name but that her debt benefitted the family before the separation. 
She claimed that the credit card debt should be divided equally. Troy testified that the credit
card accounts were Allison's, but acknowledged that they were used for the "whole family,"
including personal items for him. 

 Allison also requested that the court maintain its prior injunction order based upon the
court's finding of past family violence. Upon Allison's request, the trial court took judicial
notice of the protective order, issued September 21, 2004, finding Troy committed family
violence. 

 At the conclusion of the hearing, the trial court granted the divorce and approved the
divorce decree. With respect to the child, the court ordered that Troy's visits be supervised,
and confirmed the continuation of the permanent injunction. Regarding the property and
debt division, the court ordered the following:

 To Allison:


 Home in Beaumont, Texas
 Bank Account
 Allison's retirement account
 Dodge Caravan (2)
 Chevrolet Silverado Truck (3)
 Debt owed to Bank of America (4)
 Debt owed to Sears 
 Debt owed to Capital One Visa 
 Debt owed to Master Card 
 Debt owed to Bealls 
 Debt owed to J.C. Penney 


 

 To Troy:

 


 Troy's retirement account
 Surround sound speakers
 Bar-b-que pit
 All of Troy's tools and tool box
 Troy's clothing and personal effects



The court found the Silverado to be community property because both Allison's and Troy's
names were on the title. When Troy's counsel inquired why Allison received both the Dodge
Caravan and the Silverado, the court replied, "She gets both vehicles. [Troy is] not going to
be needing it anyway" because of his incarceration. 

 Troy contends that the court erred in its property division. Specifically, he argues that
the Chevrolet Silverado truck was his separate property and thus, should have been awarded
to him. Troy argues in the alternative, that if the truck is deemed community property, the
court mistakenly awarded it to Allison in addition to the Dodge Caravan. Additionally, Troy
asserts that the court erred by not reimbursing him for his contributions to improve Allison's
separate property and for the repairs which he paid on the Silverado. 

Property Division

 The Texas Family Code requires the trial court to order a division of the estate in a
manner the court deems "just and right," having due regard for the rights of the parties. Tex.
Fam. Code Ann. § 7.001 (Vernon 2006). A divorce court generally has wide latitude in the
exercise of its discretion to divide the marital estate. Williams v. Williams, 160 Tex. 99, 325
S.W.2d 682, 684 (1959). Thus, absent an abuse of discretion, the court's division of a
marital estate will not be disturbed on appeal. See Murff v. Murff, 615 S.W.2d 696, 698 (Tex.
1981). A court abuses its discretion when it acts without reference to any guiding rules or
principles, or alternatively, when its acts are arbitrary or unreasonable. Worford v. Stamper,
801 S.W.2d 108, 109 (Tex. 1990).

 Under the Family Code, a presumption exists that property possessed by either spouse
during or on the dissolution of the marriage is community property. Tex. Fam. Code Ann.
§ 3.003 (Vernon 2006). A spouse seeking to overcome this presumption must prove the
separate character of the disputed property by clear and convincing evidence. Id. In other
words, the spouse must trace and clearly identify the property claimed as separate property. 
In re Estate of Hanau v. Hanau, 730 S.W.2d 663, 667 (Tex. 1987). Separate property retains
its character through a series of exchanges so long as the spouse asserting separate ownership
overcomes the community property presumption by tracing the assets on hand during the
marriage back to property that, because of its time and manner of acquisition, is separate in
character. Faram v. Gervitz-Faram, 895 S.W.2d 839, 842 (Tex. App.-Fort Worth 1995, no
writ) (citing Cockerham v. Cockerham, 527 S.W.2d 162, 167 (Tex. 1975)). 

 Troy testified that the first Silverado was a gift from Allison and that he paid to insure
it. He concludes that the second Silverado, which was purchased with insurance proceeds
from the first Silverado, traces his ownership to the original gift and makes the second
Silverado his separate property. Allison, on the other hand, asserts that she paid for the
insurance on the first Silverado with her separate property and disputes that the first truck
was a gift to Troy. Allison contends that the only reason her name was not on the title was
because she was unable to return to the dealer when Troy purchased the truck. Both Troy
and Allison acknowledge that the insurance check they received was made to them jointly. 
Moreover, the title to the second Silverado contains both of their names. 

 The trial court acts as fact finder in a bench trial and is the sole judge of the credibility
of witnesses. See Murff, 615 S.W.2d at 700; Sw. Bell Media, Inc. v. Lyles, 825 S.W.2d 488,
493 (Tex. App.-Houston [1st Dist.] 1992, writ denied). As fact finder, the trial court may
consider all the facts and circumstances surrounding each witness and accept or reject all or
part of that testimony; an appellate court may not substitute its judgment for the trial court's
assessment of testimony in a bench trial. See In re W.E.R., 669 S.W.2d 716, 716-17 (Tex.
1984); Hailey v. Hailey, 176 S.W.2d 374, 383 (Tex. App.-Houston [1st Dist.] 2004, no pet.). 
 Based on the testimony before it and upon the fact that the second Silverado was titled in
both of their names, the trial judge concluded that it was community property. Given the
conflicting evidence concerning whether the first Silverado was intended as a gift, and Troy's
failure to present clear and convincing evidence tracing the purchase of the second Silverado
to his separate property, the trial court's conclusion to treat the second Silverado as
community property is supported by the evidence. We find no error in the trial court's
treatment of the second Silverado as community property subject to the court's division.

 With respect to the trial court's division of the property, the majority of the assets
awarded to Allison consisted of her separate property. Regarding the division of the
community property, Allison received the Silverado, her retirement account and a bank
account. (5) Troy received his retirement account in full plus other personal property. With
respect to the community debt, the trial court allocated all of the outstanding debts of the
marital estate to Allison, a fact that Troy ignores.

 In order to evaluate the trial court's just and fair division of property, our analysis
generally begins with the values of the various assets awarded in the divorce decree. In this
case, the record does not include the values at the time of the property division on the
retirement accounts or on any of the items of personal property. Thus, Troy does not
demonstrate on this record that the trial court erred in its division of the marital estate's assets
and liabilities. A party who complains of the trial court's division of property must
demonstrate from evidence in the record that the division was so unjust and unfair that the
division constitutes an abuse of discretion. Tex. R. App. P. 44.1; Wilson v. Wilson, 44
S.W.3d 597, 600 (Tex. App.-Fort Worth 2001, no pet.); Finch v. Finch, 825 S.W.2d 218, 221
(Tex. App.-Houston [1st Dist.] 1992, no writ); Wallace v. Wallace, 623 S.W.2d 723, 725
(Tex. Civ. App.-Houston [1st Dist.] 1981, writ dism'd). Without evidence of the values of
the assets in the record, we cannot say that the court's division of the marital estate was even
disproportionate, much less, an abuse of its discretion. 

Reimbursement Claim

 A right to reimbursement is an equitable right; it is not a right arising as a matter of
law but rather, lies within the discretion of the trial court. Vallone v. Vallone, 644 S.W.2d
455, 458-59 (Tex. 1982). A reimbursement claim arises when funds or assets of one estate
are used to benefit and enhance another estate without itself receiving some benefit. Id. at
459. The party claiming reimbursement bears the burden of proof. Id.

 Because a claim for reimbursement is an equitable claim, the trial court should look
at all facts and circumstances to determine what is fair, just, and equitable. Penick, 783
S.W.2d 194, 197 (Tex. 1988). The policy allowing a court to look at all facts and
circumstances gives the trial court considerable discretion in determining whether to offset
benefits. Kimsey v. Kimsey, 965 S.W.2d 690, 700-01 (Tex. App.-El Paso 1998, pet. denied)
(citing Penick, 783 S.W.2d at 197-98); Magill v. Magill, 816 S.W.2d 530, 535 (Tex.
App.-Houston [1st Dist.] 1991, writ denied). The discretion a trial court may exercise in its
evaluation of reimbursement claims is equally as broad as the discretion it may exercise in
its division of the marital estate. Kimsey, 965 S.W.2d at 701; Magill, 816 S.W.2d at 535.

 Allison acknowledged that Troy worked on her house and that the work improved the
value of the house. However, Troy benefitted as well. During the entire course of the
marriage, he lived rent-free in the house and enjoyed its benefits. With respect to the funds
Troy paid to repair the truck, the trial court determined that the second Silverado was
community property and Troy failed to prove that the $500 he paid toward its repair was his
separate property. Absent evidence to the contrary, we presume the funds were community
funds. We hold that the trial court did not abuse its discretion by denying Troy's
reimbursement claims.

 Based on the record before us, Troy has not demonstrated that the trial court abused
its discretion in dividing the marital estate. Accordingly, appellant's issue is overruled and
the judgment of the trial court is affirmed.

 AFFIRMED.

 ____________________________

 HOLLIS HORTON

 Justice 

Submitted on November 2, 2006

Opinion Delivered February 1, 2007

Before McKeithen, C.J., Kreger and Horton, JJ.
1. Allison admits that the title to the first Chevrolet Silverado was solely in Troy's
name but explained that she was ill and unable to go with him on the day he returned to
the dealer to purchase the truck. 
2. The van is Allison's separate property as it was purchased with proceeds obtained
from her father's lawsuit. See Tex. Fam. Code Ann. § 3.001 (Vernon 2006).
3. With the exception of the purchase price of $25,000 for the second Silverado truck,
the record does not contain values for the other assets. In addition, the trial court made
no findings of fact on the value of the real or personal property divided in its order, nor
are there findings regarding the market value of the Silverado as repaired.
4. Per the Final Decree of Divorce, the approximate debt allocated to Allison totaled
$5,365.00.
5. The record contains no testimony regarding the separate or community nature of
the bank account, so it is presumed to be community property. See Tex. Fam. Code Ann.
§ 3.003 (Vernon 2006).