# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00241-CV

**Robert Ansley, Appellant**

**v.**

**Marcia Lee Ansley, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
### NO. 98-543-F277, HONORABLE JOHN R. CARTER, JUDGE PRESIDING

This is an appeal from a post-divorce domestic-relations order granting appellee Marcia Lee Ansley a percentage of appellant Robert. Ansley=s employee stock options awarded to him after the couple entered into a mediated settlement agreement, but before the final decree of divorce was signed. Robert[1] complains that the post-divorce order was an impermissible modification of the agreed property division contained in the final divorce decree rather than a clarification of that decree. We disagree and hold that the order clarified an ambiguity in the final judgment and enforced the basic division of property agreed to by the parties in their mediated settlement agreement. We will therefore affirm the district court=s order.

### FACTUAL BACKGROUND

---

[1] For clarity, we will use the parties= first names.

One of the employee benefits provided by Robert=s employer, Dell Computer Corporation, is an employee stock-option plan in which employees are Agranted@ options to purchase Dell stock in the future at a specified price.  Under the plan, employees must become Avested@ in their stock options before they can Aexercise@ or liquidate them.[2]

The parties signed a mediated settlement agreement on February 17, 2000.  A two-page handwritten exhibit attached to the agreement set out certain terms of the property division, which included an equal division of Robert=s employee benefits.[3]  The agreement was predicated on the mediation date, February 17, 2000, rather than the as-yet-to-be-determined date of divorce.  The agreement also anticipated a qualified domestic-relations order (AQDRO@) addressing the distribution of the options. *See* Tex. Fam. Code Ann. ' 9.101-.103, .105 (West 1998).  The agreed divorce decree ultimately signed by the district court approves and incorporates the parties= agreement but set out the division of property in greater detail.  The decree also refers to the employment benefits existing on February 17 and those existing

---

[2]  The plan=s method or formula for determining plan vesting is not in the record.  Moreover, neither the plan nor a description or summary of plan benefits is in the record.

[3]  Item six of the agreement states, AQDRO 50% of 401k and 50% of stock options see exhibit B.@

after that date.[4] The divorce hearing, however, was not held until seven months later, on September 6, and the decree was signed that same day.

In the interim, Dell granted Robert a significant number of additional stock options. These additional options were not specifically addressed by the mediated settlement agreement or the divorce decree. The record does not reflect when Robert became aware of these benefits, or whether Marcia was aware that Robert received the additional options. Nothing in the record indicates that Robert advised either Marcia or the district court that the community=s assets had increased since the parties= settlement agreement.

The September 6 AAgreed Final Decree of Divorce@ provides the following description of AProperty to Husband@:

> IT IS ORDERED AND DECREED that the husband, ROBERT LESTER ANSLEY, is awarded the following as his sole and separate property. . . :
>
> . . . .
>
> H-7.   All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any . . . employee stock option plan, . . . or other benefits existing by reason of the husband=s past, present, or future employment, except as provided in H-14, infra.
>
> . . . .

---

[4] The property division in the decree sometimes refers to February 17 as the Adate of divorce@ and presumes that a qualified domestic-relations order effectuating the division would be rendered on the same date as the divorce decree; the QDRO was signed April 20, 2001.

H-14 . . . SAVE AND EXCEPT for an undivided one-half (½) interest in and to all Dell Computer Corporation stock options granted to Respondent and vested before February 17, 2000, awarded to Petitioner, MARCIA LEE ANSLEY, hereinabove, any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit sharing plan, retirement plan, pension plan, or like benefit program existing by reason of Respondent=s past, present, or future employment, including, but not limited to, the following:

. . . .

b. One-half (½) of Dell Computer Corporation stock options granted to Respondent, ROBERT LESTER ANSLEY, and vested before February 17, 2000.

. . . .

d. Any stock options granted and/or vested to Respondent by Dell Computer Corporation from and after the date of divorce, February 17, 2000.

The section of the decree entitled, AProperty to Wife@ states in relevant part:

IT IS ORDERED AND DECREED that the wife, MARCIA LEE ANSLEY, is awarded the following as her sole and separate property, . . .

. . . .

W-7. . . . and one-half (½) of Dell Computer Corporation stock options granted to Respondent, ROBERT LESTER ANSLEY, and vested before February 17, 2000.

As it turned out, February 17 was not the date of the divorce, and no qualified domestic-relations order was signed contemporaneously with the decree.

The order subject to this appeal was signed April 20, 2001 and is entitled ADomestic Relations Order and Assignment-Stock Options.@ It states in relevant part:

4

This Order and Assignment is an integral part of the Agreed Final Decree of Divorce signed in this case on September 6, 2000. . . . In compliance with those requirements, if any, the parties agree, and based on such agreement the Court specifies, finds and IT IS ORDERED AND DECREED as follows:

1.  This Order and Assignment assigns a portion of the benefits payable under the plan to [Marcia] in recognition of [Marcia]=s marital rights in [Robert]=s stock options payable and/or granted under the Plan.

    . . . .

4.  As part of a just and right division of the estate of the parties, [Marcia] is hereby allocated all right, title and interest to the following Dell Computer Corporation Stock Options, together with all stock splits, stock dividends, reverse splits, derivatives, increases and other rights and privilege in connection therewith, previously awarded to [Robert] by Dell Computer Corporation the following Options as specified within this spreadsheet:

The spreadsheet attached to the order reflects four separate grants of stock options to Robert:

A.  July 7, 1998              Grant Number  00024023

B.  November 2, 1998         Grant Number  00027067

C.  August 22, 2000          Grant Number      33134

D.  August 22, 2000          Grant Number      42134

The grants provide for varying amounts of unexercised[5] options:

A.  July 7, 1998              928  Outstanding Options

---

[5] Robert had previously exercised a portion of the first two grants.

|     |                  |                        |
|-----|------------------|------------------------|
| B.  | November 2, 1988 | 320 Outstanding Options |
| C.  | August 22, 2000  | 5920 Outstanding Options |
| D.  | August 22, 2000  | 5920 Outstanding Options |

All options contained in a particular grant do not vest at the same time. The spreadsheet reflects that the first two grants contain vested options,[6] which are apportioned 16 and 40, respectively, to Marcia. The award of vested stock options is not being challenged by Robert. However, none of the options in the latter two grants have vested.

The order also awards Marcia nonvested stock options from the four stock option grants. She is awarded nonvested stock options according to the following vesting schedule:

| A. | 7/17/98 Grant | 116 of the 7/17/2001 vesting |
| | | 116 of the 7/17/2002 vesting |
| | | 116 of the 7/17/2003 vesting |
| B. | 11/2/98 Grant | 40 of the 11/2/2001 vesting |
| | | 40 of the 11/2/2002 vesting |
| | | 40 of the 11/2/2003 vesting |
| C. | 8/22/00 Grant (#33134) | 592 of the 8/22/2001 vesting |
| | | 592 of the 8/22/2002 vesting |
| | | 592 of the 8/22/2003 vesting |
| | | 592 of the 8/22/2004 vesting |
| | | 592 of the 8/22/2005 vesting |
| D. | 8/22/00 Grant (#42134) | 592 of the 8/22/2003 vesting |
| | | 592 of the 8/22/2004 vesting |
| | | 592 of the 8/22/2005 vesting |

---

[6] The spreadsheet categorizes the stock options into Aexercisable@ and Anon-exercisable@ groups. We assume that Aexercisable@ means Avested@ and we will refer to them as Avested.@

592 of the 8/22/2006 vesting
592 of the 8/22/2007 vesting

We calculate that this order ultimately awards Marcia, after all options have vested, approximately one-half of Robert=s outstanding stock options granted by Dell.

Robert does not complain about the award to Marcia of the nonvested options from the first two grants, July 17, 1998 and November 2, 1998. He complains only about the award to Marcia of options from the August 22, 2000 grants. These grants did not exist when the case was mediated in February 2000. They were, however, in existence when the decree was signed on September 6, 2000, although it does not appear that either Marcia or the district court was aware of them.

## DISCUSSION

This dispute arises primarily because of the passage of time between the parties= mediated settlement agreement and their final divorce decree. The divorce decree was not signed until seven months after mediation.

### *Standard of Review*

As appellant, Robert has the burden of bringing forth a sufficient record to show reversible error. Tex. R. App. P. 50(d). Robert did not present a reporter=s record of the proceedings giving rise to the April 20, 2001 order being appealed. He did not request, and the district court did not file, findings of fact and conclusions of law. Where there is no reporter=s record and no findings of fact and conclusions of law, the appellate court presumes all facts necessary to support the judgment. *Guthrie v. Nat=l Homes*

*Corp.*, 394 S.W.2d 494, 495 (Tex. 1965); *Scott v. Schneider Estate Trust*, 783 S.W.2d 26, 28 (Tex. App.C Austin 1990, no writ).

### *Interpretation of Consent Judgments*

An agreed divorce decree implementing an agreed property division is controlled by the rules of construction applicable to ordinary contracts. *Allen v. Allen*, 717 S.W.2d 311, 312 (Tex. 1986); *Harvey v. Harvey*, 905 S.W.2d 760, 764 (Tex. App.C Austin 1995, no writ). If a written agreement can be given a certain or definite legal interpretation,[7] it is not ambiguous and it will be construed according to its plain language. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Thompson v. Thompson*, 500 S.W.2d 203, 207 (Tex. Civ. App.C Dallas 1973, no writ) (courts are Abound by the express stated intent of the parties as manifested within the four corners of the instrument itself@). If there is no ambiguity, the court must give literal effect to the decree as written. *Baxter v. Ruddle*, 794 S.W.2d 761, 763 (Tex. 1990).

Whether an ambiguity exists in an agreement is a question of law for the court. *Nat=l Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995); *Hurley v. Hurley*, 960 S.W.2d 287,

---

[7] A judgment must be sufficiently definite and certain to define and protect the rights of the litigants or provide a definite means to ascertain their rights so that ministerial officers may execute the judgment without having to ascertain the facts not stated therein. *Kimsey v. Kimsey*, 965 S.W.2d 690, 695 (Tex. App.C El Paso 1998, pet. denied). A divorce decree must set forth the terms of compliance in clear, specific, and unambiguous terms so that the parties can readily know exactly what duties are imposed on them. *Id*.

8

288 (Tex. App.CHouston [1st Dist.] 1997, no pet.). A contract is ambiguous if its meaning is uncertain or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393. Conflicting interpretations or expectations of the parties regarding the instrument do not an ambiguity make. *Forbau v. Aenta Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994).

If a true ambiguity does exist, the court must reform the contract to correct the mutual mistake of the parties or to reflect the true intent of the parties. *Allen*, 717 S.W.2d at 313; *Dechon v. Dechon*, 909 S.W.2d 950, 956 (Tex. App.CEl Paso 1995, no writ). Existence of an ambiguity creates a fact question and authorizes consideration of parol evidence. *Wilson v. Uzzel*, 953 S.W.2d 384, 388 (Tex. App.CEl Paso 1997, no pet.); *Soto v. Soto*, 936 S.W.2d 338, 341 (Tex. App.CEl Paso 1996, no writ).[8]

Contractual ambiguities can be patent or latent. *Nat=l Union Fire Ins.*, 907 S.W.2d at 520; *Gulf Metals Indus., Inc. v. Chicago Ins. Co.*, 993 S.W.2d 800, 804 (Tex. App.CAustin 1999, pet. denied). As the term suggests, Apatent@ambiguities are apparent from the face of the document itself. *Nat=l Union*, 907 S.W.2d at 520. Latent ambiguities arise when an otherwise unambiguous contract becomes uncertain when applied to the subject-matter with which it deals. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282-83 (Tex. 1996); *see also Zeolla v. Zeolla*, 15 S.W.3d 239, 242 (Tex. App.CHouston [14th Dist.] 2000, pet. denied) (applying test to agreed judgments). A latent ambiguity can arise when a divorce decree=s disposition of retirement benefits becomes uncertain in light of subsequent or extraneous events not contemplated by the decree. *See, e.g.*, *Zeolla*, 15 S.W.3d at 242. If a contract is

---

[8] Parol evidence is only admissible after an ambiguity is found to exist; it cannot be used to create the ambiguity. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 n.1 (Tex. 1996); *Nat=l Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520-21 (Tex. 1995).

ambiguous, its interpretation becomes a fact issue and the rules of construction are then applied. *Coker*, 650 S.W.2d at 394. The disputed language is construed in the context of the entire agreement in light of the circumstances present when the agreement was formed to find the true intention of the parties. *Id.*

### *Clarification vs. Modification of the Judgment*

The Texas Family Code authorizes subsequent actions to either enforce a prior decree, Tex. Fam. Code Ann. '' 9.006, 9.007 (West 1998), or to clarify an ambiguous decree. *Id.* ' 9.008. A court Amay render further orders to enforce the division of property made in the decree of divorce . . . to assist in the implementation of or to clarify the prior order.@ *Id.* ' 9.006(a). Furthermore, a party Amay petition a court to render a qualified domestic relations order . . . if the court that rendered a final decree of divorce . . . dividing property under this chapter did not provide a qualified domestic relations order . . . .@ *Id.* ' 9.103. But, a court may not amend, modify, alter, or change Athe division of property made or approved in the decree,@ *Id.* ' 9.007(a), and an Aorder to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.@ *Id.* Upon a finding Athat the original form of the division of property is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property.@ *Id.* ' 9.008(b).

Thus, enforcement is limited to aiding or clarifying the prior decree. *Dechon*, 909 S.W.2d at 956 (citing *Pierce v. Pierce*, 850 S.W.2d 675, 679 (Tex. App.CEl Paso 1993, writ denied)). If the court=s plenary power has expired, it may not substantially change the allocation of property in the original decree. *See Reinauer v. Reinauer*, 946 S.W.2d 853, 861 (Tex. App.CAmarillo 1997, writ denied).

10

Further, clarification requires a finding, express or implied, that the original form of the division of property lacks sufficient specificity to be enforced by contempt. *Alford v. Alford*, 40 S.W.2d 187, 189 (Tex. App.C Texarkana 2001, no pet.); Tex. Fam. Code Ann. ' 9.008(b). If a divorce decree is unambiguous, the court has no authority to alter or modify the original disposition of property. *Haworth v. Haworth*, 795 S.W.2d 296, 300 (Tex. App.C Houston [14th Dist.] 1990, no writ).

Robert asserts that the April 20, 2001 order improperly changed the parties= agreed division of their marital estate contained in the original divorce decree. He argues that all stock options received after February 17 were originally awarded to him in the decree. The subsequent order, he claims, improperly divests him of half of the post-February 17 stock options. He bases his claim on paragraphs H-7 and H-14 of the decree, which he argues apportioned to him all of the post-February 17 options. He points out that paragraph W-7 expressly awarded Marcia only a portion of the stock options granted to him before February 17, 2000. He argues that the effect of paragraph W-7 is to award him all of the stock options granted after that date.

### *Is the Original Decree Ambiguous?*

Robert=s complaint raises two questionsC whether the original decree is ambiguous, and, if so, whether the April 20 order merely construed or reconciled the decree or impermissibly changed the substantive division of property. First, we determine whether an ambiguity exists regarding the division of the stock options.

Paragraph W-7 awards Marcia one-half of Robert=s stock options vested before February 17. Paragraph H-7 of the decree awards Robert all of his employment benefits except for those awarded

11

to Marcia. Paragraph H-14, describes the employment benefits excepted from those awarded Robert due to their being set aside to Marcia. Paragraph H-14, however, is problematic because it does not clearly and definitively describe who is to receive the post-February 17 options. On the one hand, it begins by limiting the property awarded to Marcia to fifty percent of the pre-February 17 options; on the other hand, it ends by excepting from Robert=s property any post-February 17 stock options. It appears that a drafting error occurred midway through the paragraph, making the entire provision incoherent. The exact wording of paragraphs H-7 and H-14 is crucial.

Paragraph H-7 initially awards Robert all options, but then excepts from the award options described in paragraph H-14. Paragraph H-14 excepts from Robert=s award Aan undivided one-half (2) interest in . . . options granted . . . and vested before February 17, 2000@ due to their being awarded to Marcia. The paragraph goes on to describe Marcia=s award to include one-half of the options Agranted to [Robert] and vested before February 17, 2000@ and A[a]ny stock options granted and/or vested to [Robert] . . . from and after the date of divorce, February 17, 2000.@ The paragraphs could be read as awarding either Robert or Marcia all of the Aoptions granted . . . after . . . February 17, 2000.@ The provision is patently ambiguous, and, in light of subsequent events, latently ambiguous. *See Gulf Metals Indus*., 993 S.W.2d at 804. As a result, it fell to the district court to construe the paragraphs in the context of the parties= entire settlement agreement and in light of the circumstances present when the agreement was reached. *See Coker*, 650 S.W.2d at 394.

The district court=s order implicitly found an ambiguity existed. We hold as a matter of law that paragraphs H-7 and H-14, when read together, are ambiguous with regard to the disposition of the

post-February 17, 2000 options.  The next task is to construe the decree to effectuate the intent of the

parties without substantively changing the property division.

### *What was the Intent of the Parties?*

We must determine the intent of the parties regarding the post-February 17 options.  *See id.*

Robert points to paragraphs W-7 and H-7 for proof that the parties intended him to receive those options.

These paragraphs are general grants of the options, but are based on a categorization and division

contained in the ambiguous paragraph H-14.  We believe that the best source for ascertaining the parties=

intent is the mediated settlement agreement itself.[9]

The mediated settlement agreement, which was incorporated by reference into the final

decree, provides in relevant part:

MEDIATED SETTLEMENT AGREEMENT

The undersigned parties to this agreement agree to compromise and settle the
claims and controversies between them.  The parties wish to avoid potentially protracted
and costly litigation.

1.    Terms of the settlement are set out on Exhibit A attached to this agreement.

. . . .

"    QDRO 50 % of 401k and 50 % stock options see ~~exhibit B~~

---

[9] Although the decree expressly provides that it controls the agreement, the decree is ambiguous,
therefore, we must necessarily look to the agreement.

13

Attached to the agreement are six pages of stock-option-account documentation. These pages appear to have been computer generated on February 15, 2000, and contain information about the stock-option grants dated July 17, 1998 and November 2, 1998. They are labeled Aex. B@ and above that redacted notation is handwritten, AExhibit >A= Page 5.@ There is no exhibit AB@ attached to the agreement.[10]

Interpreting the mediated settlement agreement in conjunction with the attached pages, we conclude that the parties intended that Marcia would receive fifty percent of Robert=s stock options, and, at the time of the agreement, those stock options consisted of what was reflected in the referenced pages. The equal division of the employment benefits was the heart of the parties= agreement. The referenced pages appear to have been attached for informational purposes. The agreement does not say that Marcia is to receive fifty percent of whatever is reflected in the referenced pages. It provides that Marcia is to receive fifty percent of the stock options, and then it references pages showing the status of those stock options. The question is what emphasis did the parties place on these attached pages. Were they intended to define the extent of the stock options divided in the agreement or were they intended to be merely informational?

The mediated settlement agreement itself makes no mention of the February 17 date in connection with the division of options. The agreement sets forth a simple, equal division of the employment benefits. The first mention of February 17, 2000 in connection with the division of options is the divorce decree. The agreement was signed by both parties and their counsel, personally. The decree was signed by the parties and by Robert=s attorney, who also signed for Marcia=s attorney, Awith permission.@ We hold

---

[10] Clearly, these are the pages referred to in the agreement quoted above.

14

that the district court was correct in concluding that the pages attached to the mediated settlement agreement were not part of the substantive division of the options. The parties= agreement is clear as to the proportions of the division, fifty-fifty. Had the parties intended for less than all of the stock options existing at the time of divorce to be evenly split, they could have included restrictive language to that effect in the agreement.

We find the court of appeals= opinion in *Zeolla* instructive. There, the parties= agreed property division and decree provided that the wife was entitled to a percentage of the husband=s retirement benefits when the husband retired at age sixty-five. The husband, however, retired at age fifty-seven and refused to pay benefits to his ex-wife because he did not retire at the age specified in the decree. The court held that his early retirement revealed a latent ambiguity in the decree and made the decree so unspecific that it could not be enforced through contempt. *Zeolla*, 15 S.W.3d at 242. The latent ambiguity authorized the court to clarify the decree. *See* Tex. Fam. Code Ann.' 9.008(b).

The court held that the wife was entitled to receive benefits despite the early retirement and it adjusted the benefits to the wife proportionately to reflect the early retirement. *Id*. The appellate court rejected the husband=s complaint that the new order was an impermissible modification of the final decree. *Id*. The new order was found to be a valid clarification of the original decree because it did not alter the essential proportional division of the retirement benefits. *Id*. The court reasoned that the new order did not attach new legal consequences to previous events and did not impair any vested rights. *Id*. at 243.

Both here and in *Zeolla*, events subsequent to the parties= agreement rendered their divorce decree ambiguous. In both cases, the decree attempted to divide property according to conditions that

15

never occurred. *Zeolla* involved a discrepancy in the decree about the date of the employee-spouse=s retirement which gave rise to an ambiguity about the division of retirement benefits. The case now before us revolves around a decree that attempted to divide employee benefits according to an ambiguous formula based on an unrealized Adate of divorce.@ In both cases, the lower court resolved the ambiguity by returning to the heart of the parties= agreement and implementing the basic percentage division agreed to by the parties. There is considerable wisdom in resolving the ambiguity in favor of the basic division initially agreed to by the parties.

We hold that the district court properly resolved the ambiguity in this case by effectuating an equal division of the stock options. Based on the facts and circumstances in this case, the district court correctly reconciled the ambiguity without altering the substantive division of property in the original decree.

## CONCLUSION

We overrule Robert=s issue on appeal and affirm the district court=s order.

Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: August 30, 2002

Do Not Publish

16