T.C. Memo. 1996-446


UNITED STATES TAX COURT


KAY A. CLAWSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15334-95.            Filed September 30, 1996.


James S. Nowak, for petitioner.

Katherine Lee Wambsgans, for respondent.


MEMORANDUM OPINION

KÖRNER, Judge:  Respondent determined a deficiency in petitioner's Federal income tax for the year 1990 in the amount of $10,741.

All statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to

the Tax Court Rules of Practice and Procedure, except as otherwise noted.

This case was submitted to the Court upon a full stipulation of facts and exhibits without trial under the provisions of Rule 122. Accordingly, after the settlement of other issues, it only remains for us to decide the income tax effect of a distribution which petitioner, as alternate payee, received from her former husband's thrift and pension funds under a qualified domestic relations order (QDRO) related to her divorce.

At the time the petition herein was filed, petitioner was a resident of Ohio. Petitioner was divorced from her husband, Mr. Willadsen, in 1989. Petitioner remarried in late 1990 and for that year timely filed a joint return together with her new spouse, Mr. Clawson. Mr. Clawson's liability is not an issue in this case.

In December 1989, petitioner and Mr. Willadsen executed a property settlement agreement incident to their divorce. In that agreement, the parties agreed that, if covered by a QDRO, $11,930 would be paid to petitioner, representing one-half of the present value of Mr. Willadsen's pension benefits due to him from the Marathon Petroleum Co. In addition, if covered by the QDRO, $23,000 would be paid to petitioner in full satisfaction of her share of the thrift plans administered by the Marathon Petroleum Co. for the benefit of Mr. Willadsen. The parties agreed that thereafter petitioner would have no further interest or claim

against any benefits that were due to Mr. Willadsen from his present or future employer.

The parties were formally divorced by the State courts of Ohio in December 1989. The decree of divorce ordered that the settlement agreement be incorporated into and made part of the judgment. In March 1990, the appropriate Ohio court filed a supplemental order in the divorce case which the parties agree is the QDRO referred to in the parties' above settlement agreement, and is a QDRO within the meaning of section 414(p). At paragraph 4 of said QDRO, the Ohio court ordered: "Any taxes due to Internal Revenue Services on the amount distributed from the Member's R Account shall be the responsibility of Member". The parties do not dispute that the "R" account refers to the thrift and pension plans of the Marathon Oil [or Petroleum] Co., which were held for the benefit of Mr. Willadsen, who was the "Member", and that petitioner under the QDRO was designated as the alternate payee of such plans.

Under the terms of the agreement, disbursement in the amount of $34,930 was made from Marathon Oil Co. to petitioner, representing the amount payable under the QDRO, plus $1,156.26 in interest, all in May 1990.

As part of her joint return for the year 1990, petitioner did not report the amount of the QDRO distribution made to her. Respondent thereafter issued to petitioner the statutory notice of deficiency that is at issue in this case.

Within the broad rubric of section 61(a), which defines gross income as all income from whatever source derived, the law is clear that a distribution from a qualified retirement plan[1] is generally taxed to the distributee and includable in income in the year distributed. Specifically, section 402(a)(1), as it applies to the facts in the instant case provides:

> Except as provided in paragraph (4) [not here relevant], the amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to him, in the year in which so distributed, under section 72 * * *

More specifically, section 402(a)(9) provides:

> For purposes of subsection (a)(1) and section 72, any alternate payee who is the spouse or former spouse of the participant shall be treated as the distributee of any distribution or payment made to the alternate payee under a qualified domestic relations order (as defined in section 414(p)).[2]

There is no dispute between the parties here, that the instrument in question was a QDRO within the meaning of section 402(a)(9). There is also no dispute that petitioner was the alternate payee under the provisions of the separation agreement and the QDRO. The parties have also agreed that the Ohio court order of March 1990 in this case qualifies as a QDRO. It would

---

[1] There is no dispute between the parties that the subject plans are "qualified plans" within the meaning of the Code.

[2] The above quoted section of the Code was replaced by section 402(e) under the provisions of Unemployment Compensation Amendments of 1992, Pub. L. 102-318, sec. 521, 106 Stat. 291, 308, for years after Dec 31, 1992. For the year 1990, which is here in issue, sec. 402(a)(9) was in effect.

appear that the facts in this case fit the mandatory provisions of section 402(a)(9), calling for the taxation of the distribution here to petitioner as the alternate payee under a QDRO. Nevertheless, petitioner points to the language of the QDRO itself, which provides that the tax on the amount distributed here was to be the liability of Mr. Willadsen. We think this is nothing more than an attempt by the parties to the divorce to change by their private contract (albeit sanctified by a State court QDRO) the impact of Federal income tax in a situation which is clearly provided for by the Code. State law may indeed determine the rights to and ownership of property, as the divorce decree, settlement agreement and QDRO provide in this case, Poe v. Seaborn, 282 U.S. 101 (1930), but the Internal Revenue Code will determine how those property rights, once established, shall be taxed. Morgan v. Commissioner, 309 U.S. 78 (1940). Where a distribution is made from a qualified plan to a participant's former spouse pursuant to a QDRO, as here, such former spouse is to be considered the "alternate payee" and taxed on such distribution as the distributee; the subjective intention of the former husband and wife in trying to agree to shift the burden of taxation resulting from this transaction is not effective or relevant. Hawkins v. Commissioner, 86 F.3d 982 (10th Cir. 1996), revg. on other grounds 102 T.C. 61 (1994). Petitioner may have a cause of action against her former spouse under the separation agreement and the QDRO, but such cause of

action is between them, and does not affect the rights of the fisc.

We accordingly conclude that the distribution to petitioner from Mr. Willadsen's pension and thrift funds in 1990 was to petitioner as alternate payee and was taxable to her under the provisions of section 402(a)(9).

<u>Decision will be entered</u>

<u>under Rule 155</u>.