**Geneva Tillery SWOBODA, Appellant,**

v.

**Norman Lee SWOBODA, Appellee.**

**No. 13–98–632–CV.**

Court of Appeals of Texas, Corpus Christi.

March 31, 2000.

William A. Dudley, Cook, Dudley & Associates, Corpus Christi, for appellant.

John A. George, Fly & Moeller, Victoria, for appellee.

Before Justices DORSEY, CHAVEZ and RODRIGUEZ.

## O P I N I O N

MELCHOR CHAVEZ, Justice.

Appellant Geneva Tillery appeals from a summary judgment granted in favor of her former husband, Norman Lee Swoboda. By three issues, appellant contends the trial court erred in granting summary judgment, in failing to enforce the provisions of the parties' divorce decree, and in failing to file findings of fact and conclusions of law. We affirm.

Tillery and Swoboda were divorced on December 28, 1995. Among other community property divisions, the divorce decree provided that appellant would receive as her sole and separate property:

the cash sum of Six Hundred Ninety–Five Thousand ($695,000.00) Dollars to be paid by Respondent out of Respondent's interest in the VICTORIA MA-

CHINE WORKS, INC. THRIFT PLAN ('Thrift Plan'), which is administered by the Victoria Bank & Trust Company of Victoria, Texas.

Petitioner is further awarded sixty-five (65%) percent of any and all accrued earnings on the account balance of Norman Swoboda as of September 7, 1995....

The decree made no provisions for federal income tax liability associated with this distribution.

In March 1996, appellant filed a motion to enforce the award. Appellee responded with a cross-motion and explained that under federal law, the Employee Retirement Income Security Act (ERISA) prevents the withdrawal of funds from a qualified retirement plan without a qualified domestic relations order (QDRO).[1] On April 1, the district court held a hearing on the motions. With both parties in agreement, the court entered a QDRO entitling Geneva Tillery, as an alternate payee, to be paid $770,910.44 from the thrift plan.[2] Consequently, the trial court dismissed appellant's motion to enforce.

Although the issue of which party should be responsible for the tax consequences of this payment was discussed, both parties indicated that the determination of federal tax liability would be governed by the Internal Revenue Code. The court agreed and no tax provision was included in the QDRO. Later that same month, when this amount was paid to appellant, she chose to roll part of it over into an individual retirement account and paid federal withholding tax on the remainder that was distributed to her.[3]

Thereafter, appellant filed two more motions to enforce in October 1996 and No-

1. The term "qualified domestic relations order" means a domestic relations order which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under the plan. 29 U.S.C.A. § 1056(d)(3)(B)(i) (1999).

2. The amount of $770,910.44 includes the award of $695,000 plus accrued earnings.

3. In February 1997, appellant received a final, additional distribution of $61,977.55 which represented earnings that could not be calculated until after September 30, 1996.

vember 1997. The latter motion complained of the tax liability she had incurred as a result of taking her share of the monies from the thrift plan pursuant to the divorce decree and the QDRO. In this motion, appellant sought a declaratory judgment that the divorce decree had actually awarded her a non-taxable sum of cash payable from her former husband that obligated him to incur all the penalties and tax liability associated with withdrawing funds from his thrift plan. Appellee's response argued that because federal law pre-empted state law on the subject of taxability, the trial court was without jurisdiction to alter the parties' respective tax liability.

Appellee simultaneously filed a motion for summary judgment asserting the following grounds in support of his motion: res judicata, collateral estoppel, compromise and settlement, accord and satisfaction, lack of subject matter jurisdiction, waiver and estoppel, and impossibility of performance. Appellant did not file a response to appellee's motion. In October 1998, the trial court granted appellee's motion for summary judgment without stating the specific grounds for doing so. This appeal followed.

 In reviewing a summary judgment, the central inquiry is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the plaintiff's causes of action. Tex.R. Civ. P. 166a; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). The burden of proof is on the movant, and all doubts regarding material facts are resolved against the movant. *Nixon*, 690 S.W.2d at 548–49. Grounds supporting or opposing a summary judgment must be raised in the motion or written response to the motion before the trial court renders judgment. *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex.1986); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). Because appellant failed to respond to the summary

judgment motion, the only ground for reversal we can consider is the legal sufficiency of the appellee's summary judgment proof. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex.1993); *Camp v. Camp*, 972 S.W.2d 906, 908 (Tex. App.-Corpus Christi 1998, pet. denied). Because the trial court's judgment did not specify the ground relied upon for its ruling, we will affirm the judgment if any of the theories advanced are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

By her first and second issues, appellant contends the trial court erred in granting summary judgment and in failing to enforce the divorce decree. Appellant claims the divorce decree awarded her, tax-free, $695,000 in cash plus accrued earnings. In order to satisfy this award, she argues the decree contemplated that appellee would be required to take the necessary steps to withdraw these funds from the thrift plan, incur all associated penalties and taxes himself, and then turn that amount of money over to her.

 A property settlement agreement, although incorporated into a final decree of divorce, is treated as a contract and its legal force and its meaning are governed by the law of contracts. *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex.1984). In construing an unambiguous contract, the court should give effect to the intention of the parties as expressed or as is apparent in the writing. *Exxon Corp. v. West Texas Gathering Co.*, 868 S.W.2d 299, 302 (Tex.1993). The language of a contract shall be given its plain grammatical meaning if possible, and the court should avoid any construction of a contract which is unreasonable, inequitable, and oppressive. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Horizon Resources, Inc. v. Putnam*, 976 S.W.2d 268, 270 (Tex.App.—Corpus Christi 1998, no pet.).

 Contrary to appellant's subjective interpretation of what the decree contem-

plated, the language of the decree does not support appellant's argument. In reading what the divorce decree actually states, there is no indication that the parties intended for the appellee to incur the tax liability associated with appellant's property award. If it had been intended that appellant receive a non-taxable cash award of $695,000, then the decree could have made that provision without mandating the source of these funds. By providing that the cash award would be paid out of appellee's interest in the thrift plan, the decree contemplated that this distribution would constitute a taxable event. Furthermore, if the language of the decree supported appellant's position, then there would have been no reason for appellant to agree to the QDRO that was subsequently entered by the court which identified her as an "alternate payee" of the thrift plan.

■ But once the QDRO was entered without objection, and appellant received her distribution, she had knowledge or should have had knowledge that she would be responsible for the federal income tax on the award. In fact, during the April 1, 1996 hearing on appellant's first motion to enforce, her counsel conceded that with regard to the tax liability, "That's something that the Internal Revenue Service is going to determine...." He was correct. The Internal Revenue Code provides that any amount of money actually distributed to the distributee of a qualified trust, such as the thrift plan in this case, shall be taxable to the distributee. 26 U.S.C.A. § 402(a) (Supp.1999). However, where a distribution is made from a qualified plan to a participant's former spouse pursuant to a QDRO, as here, the former spouse is to be considered the "alternate payee" and will be taxed on such distribution as the distributee. 26 U.S.C.A. § 402(e)(1)(a) (Supp.1999).

Two cases cited by appellee are determinative on this issue. In *Hawkins v. Commissioner of Internal Revenue*, 86 F.3d 982 (10th Cir.1996), Arthur and Glenda Hawkins were divorced by a New Mexico district court, and as a compromise distribution of the community property, the wife was awarded cash of one million dollars from the husband's pension plan. This distribution was made, but when neither party reported it as income on their separately filed tax returns, the Commissioner of Internal Revenue issued notices of deficiency to both sides. The United States Tax Court concluded that the divorce decree did not constitute a QDRO and ordered the husband to include the one million dollar distribution in his gross income. The Court of Appeals for the Tenth Circuit reversed and held that the decree was a QDRO. *Id.* at 993–94. It further held that, under the provisions of the Internal Revenue Code dealing with distributions from qualified retirement plans, the wife was an "alternate payee" and was responsible for payment of all income taxes associated with her award. *Id.*

A similar result was reached by the United States Tax Court in *Clawson v. Commissioner of Internal Revenue*, 72 T.C.M. (CCH) 814 (1996). There, the court held that amounts payable to the wife under a QDRO from her ex-husband's pension plan were taxable to the wife, notwithstanding the fact that the state court trial judge had ordered the taxes paid by the husband. *Id.* at 815. Citing the provisions of the Internal Revenue Code that we have cited in the present case, the court stated:

State law may indeed determine the rights to and ownership of property, as the divorce decree, settlement agreement and QDRO provide in this case, *Poe v. Seaborn*, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239 (1930), but the Internal Revenue Code will determine how those property rights, once established, shall be taxed. *Morgan v. Commissioner*, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940).

Because the decree was silent with regard to which party was responsible for the tax obligation, we cannot agree that the trial court modified its provisions or failed to enforce the decree. But even if the decree had specified that the appellee

was obligated to pay the taxes, once the QDRO was entered, the tax court decision in *Clawson* mandates that appellant would have been liable for the taxes · notwithstanding a determination from the state district court. Thus, the trial court properly granted summary judgment on the ground that it was without jurisdiction to interfere with the Internal Revenue Code's determination of taxability. Appellant's first and second issues are overruled.

■ By her final issue, appellant contends the trial court committed reversible error by failing to file findings of fact and conclusion of law in connection with the summary judgment. Findings of fact and conclusions of law "have no place" in a summary judgment proceeding because in order for a summary judgment to be rendered, there cannot be a "genuine issue as to any material fact," and the legal grounds are limited to those stated in the motion and response. *IKB Indus. Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997) (citing *Linwood v. NCNB Texas*, 885 S.W.2d 102, 103 (Tex.1994)). Appellant's third issue is overruled.

Accordingly, we affirm the summary judgment.