NUMBER 13-98-632-CV 



COURT OF APPEALS 

THIRTEENTH DISTRICT OF TEXAS 

CORPUS CHRISTI 

___________________________________________________________________ 



GENEVA TILLERY SWOBODA, Appellant, 



v. 



NORMAN LEE SWOBODA, Appellee. 

___________________________________________________________________ 



On appeal from the 135th District Court 

of Victoria County, Texas. 

___________________________________________________________________ 



O P I N I O N 



Before Justices Dorsey, Chavez and Rodriguez 



Opinion by Justice Chavez 



Appellant Geneva Tillery appeals from a summary judgment granted in favor of her former
husband, Norman Lee Swoboda. By three issues, appellant contends the trial court erred in
granting summary judgment, in failing to enforce the provisions of the parties' divorce
decree, and in failing to file findings of fact and conclusions of law. We affirm. 

Tillery and Swoboda were divorced on December 28, 1995. Among other community property
divisions, the divorce decree provided that appellant would receive as her sole and
separate property: 

the cash sum of Six Hundred Ninety-Five Thousand ($695,000.00) Dollars to be paid by
Respondent out of Respondent's interest in the VICTORIA MACHINE WORKS, INC. THRIFT PLAN
('Thrift Plan'), which is administered by the Victoria Bank & Trust Company of
Victoria, Texas. 

Petitioner is further awarded sixty-five (65%) percent of any and all accrued earnings
on the account balance of Norman Swoboda as of September 7, 1995 . . . . 



The decree made no provisions for federal income tax liability associated with this
distribution. 

In March 1996, appellant filed a motion to enforce the award. Appellee responded with a
cross-motion and explained that under federal law, the Employee Retirement Income Security
Act (ERISA) prevents the withdrawal of funds from a qualified retirement plan without a
qualified domestic relations order (QDRO).(1) On April 1,
the district court held a hearing on the motions. With both parties in agreement, the
court entered a QDRO entitling Geneva Tillery, as an alternate payee, to be paid
$770,910.44 from the thrift plan.(2) Consequently, the
trial court dismissed appellant's motion to enforce. 

Although the issue of which party should be responsible for the tax consequences of
this payment was discussed, both parties indicated that the determination of federal tax
liability would be governed by the Internal Revenue Code. The court agreed and no tax
provision was included in the QDRO. Later that same month, when this amount was paid to
appellant, she chose to roll part of it over into an individual retirement account and
paid federal withholding tax on the remainder that was distributed to her.(3)


Thereafter, appellant filed two more motions to enforce in October 1996 and November
1997. The latter motion complained of the tax liability she had incurred as a result of
taking her share of the monies from the thrift plan pursuant to the divorce decree and the
QDRO. In this motion, appellant sought a declaratory judgment that the divorce decree had
actually awarded her a non-taxable sum of cash payable from her former husband that
obligated him to incur all the penalties and tax liability associated with withdrawing
funds from his thrift plan. Appellee's response argued that because federal law pre-empted
state law on the subject of taxability, the trial court was without jurisdiction to alter
the parties' respective tax liability. 

Appellee simultaneously filed a motion for summary judgment asserting the following
grounds in support of his motion: res judicata, collateral estoppel, compromise and
settlement, accord and satisfaction, lack of subject matter jurisdiction, waiver and
estoppel, and impossibility of performance. Appellant did not file a response to
appellee's motion. In October 1998, the trial court granted appellee's motion for summary
judgment without stating the specific grounds for doing so. This appeal followed. 

In reviewing a summary judgment, the central inquiry is whether the summary judgment
proof establishes as a matter of law that there is no genuine issue of material fact as to
one or more of the plaintiff's causes of action. Tex. R. Civ. P. 166a; Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548 (Tex. 1985). The burden of proof is on
the movant, and all doubts regarding material facts are resolved against the movant. Nixon,
690 S.W.2d at 548-49. Grounds supporting or opposing a summary judgment must be raised in
the motion or written response to the motion before the trial court renders judgment. City
of San Antonio v. Schautteet, 706 S.W.2d 103, 104 (Tex. 1986); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 679 (Tex.1979). Because appellant failed to
respond to the summary judgment motion, the only ground for reversal we can consider is
the legal sufficiency of the appellee's summary judgment proof. See McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 343 (Tex. 1993); Camp v. Camp,
972 S.W.2d 906, 908 (Tex. App.-Corpus Christi 1998, pet. denied). Because the trial
court's judgment did not specify the ground relied upon for its ruling, we will affirm the
judgment if any of the theories advanced are meritorious. See State Farm Fire &
Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). 

By her first and second issues, appellant contends the trial court erred in granting
summary judgment and in failing to enforce the divorce decree. Appellant claims the
divorce decree awarded her, tax-free, $695,000 in cash plus accrued earnings. In order to
satisfy this award, she argues the decree contemplated that appellee would be required to
take the necessary steps to withdraw these funds from the thrift plan, incur all
associated penalties and taxes himself, and then turn that amount of money over to her. 

A property settlement agreement, although incorporated into a final decree of divorce,
is treated as a contract and its legal force and its meaning are governed by the law of
contracts. McGoodwin v. McGoodwin, 671 S.W.2d 880, 882 (Tex. 1984). In construing
an unambiguous contract, the court should give effect to the intention of the parties as
expressed or as is apparent in the writing. Exxon Corp. v. West Texas Gathering Co.,
868 S.W.2d 299, 302 (Tex. 1993). The language of a contract shall be given its plain
grammatical meaning if possible, and the court should avoid any construction of a contract
which is unreasonable, inequitable, and oppressive. Reilly v. Rangers Management, Inc.,
727 S.W.2d 527, 529 (Tex. 1987); Horizon Resources, Inc. v. Putnam, 976 S.W.2d
268, 270 (Tex. App.--Corpus Christi 1998, no pet.). 

Contrary to appellant's subjective interpretation of what the decree contemplated, the
language of the decree does not support appellant's argument. In reading what the divorce
decree actually states, there is no indication that the parties intended for the appellee
to incur the tax liability associated with appellant's property award. If it had been
intended that appellant receive a non-taxable cash award of $695,000, then the decree
could have made that provision without mandating the source of these funds. By providing
that the cash award would be paid out of appellee's interest in the thrift plan, the
decree contemplated that this distribution would constitute a taxable event. Furthermore,
if the language of the decree supported appellant's position, then there would have been
no reason for appellant to agree to the QDRO that was subsequently entered by the court
which identified her as an "alternate payee" of the thrift plan. 

But once the QDRO was entered without objection, and appellant received her
distribution, she had knowledge or should have had knowledge that she would be responsible
for the federal income tax on the award. In fact, during the April 1, 1996 hearing on
appellant's first motion to enforce, her counsel conceded that with regard to the tax
liability, "That's something that the Internal Revenue Service is going to determine.
. . ." He was correct. The Internal Revenue Code provides that any amount of money
actually distributed to the distributee of a qualified trust, such as the thrift plan in
this case, shall be taxable to the distributee. 26 U.S.C.A. 402(a) (Supp. 1999). However,
where a distribution is made from a qualified plan to a participant's former spouse
pursuant to a QDRO, as here, the former spouse is to be considered the "alternate
payee" and will be taxed on such distribution as the distributee. 26 U.S.C.A.
402(e)(1)(a) (Supp. 1999). 

Two cases cited by appellee are determinative on this issue. In Hawkins v.
Commissioner of Internal Revenue, 86 F.3d 982 (10th Cir. 1996), Arthur and Glenda
Hawkins were divorced by a New Mexico district court, and as a compromise distribution of
the community property, the wife was awarded cash of one million dollars from the
husband's pension plan. This distribution was made, but when neither party reported it as
income on their separately filed tax returns, the Commissioner of Internal Revenue issued
notices of deficiency to both sides. The United States Tax Court concluded that the
divorce decree did not constitute a QDRO and ordered the husband to include the one
million dollar distribution in his gross income. The Court of Appeals for the Tenth
Circuit reversed and held that the decree was a QDRO. Id. at 993-94. It further
held that, under the provisions of the Internal Revenue Code dealing with distributions
from qualified retirement plans, the wife was an "alternate payee" and was
responsible for payment of all income taxes associated with her award. Id. 

A similar result was reached by the United States Tax Court in Clawson v.
Commissioner of Internal Revenue, 72 T.C.M. (CCH) 814 (1996). There, the court held
that amounts payable to the wife under a QDRO from her ex-husband's pension plan were
taxable to the wife, notwithstanding the fact that the state court trial judge had ordered
the taxes paid by the husband. Id. at 815. Citing the provisions of the Internal
Revenue Code that we have cited in the present case, the court stated: 

State law may indeed determine the rights to and ownership of property, as the divorce
decree, settlement agreement and QDRO provide in this case, Poe v. Seaborn, 282
U.S. 101 (1930), but the Internal Revenue Code will determine how those property rights,
once established, shall be taxed. Morgan v. Commissioner, 309 U.S. 78 (1940). 



Because the decree was silent with regard to which party was responsible for the tax
obligation, we cannot agree that the trial court modified its provisions or failed to
enforce the decree. But even if the decree had specified that the appellee was obligated
to pay the taxes, once the QDRO was entered, the tax court decision in Clawson
mandates that appellant would have been liable for the taxes notwithstanding a
determination from the state district court. Thus, the trial court properly granted
summary judgment on the ground that it was without jurisdiction to interfere with the
Internal Revenue Code's determination of taxability. Appellant's first and second issues
are overruled. 

By her final issue, appellant contends the trial court committed reversible error by
failing to file findings of fact and conclusion of law in connection with the summary
judgment. Findings of fact and conclusions of law "have no place" in a summary
judgment proceeding because in order for a summary judgment to be rendered, there cannot
be a "genuine issue as to any material fact," and the legal grounds are limited
to those stated in the motion and response. IKB Indus. Ltd. v. Pro-Line Corp.,
938 S.W.2d 440, 441 (Tex. 1997) (citing Linwood v. NCNB Texas, 885 S.W.2d 102,
103 (Tex. 1994)). Appellant's third issue is overruled. 

Accordingly, we affirm the summary judgment. 

MELCHOR CHAVEZ 

Justice 







Publish. 

Tex. R. App. P. 47.3. 



Opinion delivered and filed this 

the 31st day of March, 2000. 

1. The term "qualified domestic relations order" means a
domestic relations order which creates or recognizes the existence of an alternate payee's
right to, or assigns to an alternate payee the right to, receive all or a portion of the
benefits payable with respect to a participant under the plan. 29 U.S.C.A.
1056(d)(3)(B)(i) (1999). 

2. The amount of $770,910.44 includes the award of $695,000 plus
accrued earnings. 

3. In February 1997, appellant received a final, additional
distribution of $61,977.55 which represented earnings that could not be calculated until
after September 30, 1996.