Affirmed and Opinion filed July 28,
2011.

 

In
The

Fourteenth
Court of Appeals



NOS.
14-09-01074-CV

         
14-10-00567-CV



Guillermo
Quijano Jr., Appellant 

v.

Marita Quijano,
Appellee 



On Appeal from
the 311th District Court

Harris County, Texas

Trial Court
Cause No. 2009-22577



 

OPINION 

In these companion appeals, appellant Guillermo
Quijano, Jr. challenges (1) a final decree of divorce, dissolving his marriage
to appellee Marita Quijano and dividing their marital assets; and (2) an
amended Qualified Domestic Relations Order (QDRO) issued by the trial court to
effect a lump sum child support obligation.  Respecting the final decree, Guillermo
raises a single issue contending that the trial court did not have sufficient
evidence of the value of the marital estate to render a just and right division
of the property.  Respecting the QDRO, Guillermo raises a single issue
contending that the trial court’s order was void as a matter of law because it
altered the division of property contained in the decree.  We overrule both
issues and affirm both the decree and the order.

I.  Background

            Guillermo and
Marita were married on September 23, 1993.  They had one child together. 
Marita filed for divorce on April 10, 2009.  Although Guillermo was served with
the lawsuit shortly thereafter, he never filed an answer.  At the default
judgment hearing on September 25, 2009, Marita offered into evidence a proposed
division of marital property and an unsworn inventory, as well as supporting
documentation for the figures contained therein.  She also presented her own
testimony in support of her proposed division.  Marita’s proposed division
valued the entire marital estate (community assets minus community liabilities)
at $395,686.39.  In the document, it was further proposed that Guillermo be
awarded assets and liabilities totaling $109,793.15, and Marita be awarded
assets and liabilities totaling $285,893.24.

            In the final
decree of divorce, signed September 25, the trial court dissolved the marriage
between the parties, resolved possession and access issues dealing with the
only child of the marriage, and substantially adopted Marita’s proposed
division of the marital assets.  The court specifically awarded the marital
home to Marita as well as various accounts and personal property, including the
entirety of a Bank of America checking account.  To Guillermo, the court
awarded property in the Philippines as well as various accounts, including a Chase
business checking account, a vehicle, and his business.  The court also
assigned various liabilities to each of the parties.

Regarding the 2008 and 2009 tax years, the court
ordered the parties to file separate federal income tax returns listing only their
respective individual earnings.  This ruling further made it clear that each
party was responsible for any tax liability resulting from their separate
returns, and each would be entitled to any refund on said returns.  The court
further ordered each party to indemnify the other for any tax liability
associated with the individual’s tax returns for those years.

Additionally in the decree, the court found that a
lump sum award of child support was appropriate under the circumstances of the
case.  For that express purpose, the court ordered that Marita receive $89,929.78,
to be derived from three community property retirement accounts in Guillermo’s
name.  The accounts in question were (1) a Roth Individual Retirement Account
with TD Ameritrade, (2) a retirement plan with ING, and (3) a 401K savings plan
(designated “RCG Information Technology, Inc. 401K Savings Plan”) with The
Prudential Insurance Company.  At the same time as the final decree, the court
issued two QDROs to effect the lump sum child support award.  One of the QDROs
was addressed to the ING account, and one was addressed to the Prudential
account.[1] 
In both, the child was named as “Alternate Payee” and funds were to be
transferred out of Guillermo’s retirement accounts and into an account bearing
the child’s name.  Regarding taxation of withdrawals, both stated:  “Alternate
Payee [the child] and Respondent [Guillermo] are each responsible for the
appropriate taxability of distributions made to them, and are hereby ORDERED to
report any distributions which either of them may receive on their respective
federal income tax returns for the year received.”

On October 23, 2009, Guillermo timely filed a motion
for new trial.  The trial court denied the motion but reformed the judgment to
make it consistent with Marita’s pleadings regarding conservatorship of the
child.

Subsequently, the court issued an amended QDRO on
March 17, 2010.  This amended QDRO addressed only the Prudential account.[2]  It again
named the child as “Alternate Payee” and ordered funds transferred into an
account bearing his name.  Regarding taxes, however, the amended QDRO stated as
follows:  “The Respondent [Guillermo], who is
the Participant in the Plan referred to
herein, shall be responsible for the taxability of any distribution to the Alternate
Payee [the child] and is hereby ORDERED to
report such distribution on his Federal Income Tax Return for the year in which it is
received.”  Additionally, the amended QDRO provides that if the child, as
Alternate Payee, were to die before receiving his full share of the funds, his
designated beneficiaries would be paid a lump sum cash payment in the amount of
the remaining funds.  We will first address Guillermo’s contentions regarding
the final decree; we will then discuss his contentions regarding the amended
QDRO.

II.  Appeal From Final Decree

In his appeal from the divorce decree, Guillermo
raises a single issue contending that the division of the community estate
contained in the decree should be reversed and remanded because the trial court
did not have sufficient evidence at the default judgment hearing to effect a
just and right division of the property.  Specifically, Guillermo challenges
the court’s rulings in regard to four items, contending that:  (1) the
statements used to establish the values in a Chase bank account were too old;
(2) the amount awarded from a Bank of America account was different than what
the bank statement indicated was in the account; (3) the court improperly included
estimated closing costs in valuing real property owned by the parties and
granted to Marita; and (4) the court erred in dividing the community estate
without knowing the value of the parties’ tax liabilities for 2008 and 2009. 
We will discuss each item in turn.

A.  Standards of Review

            The Texas Family
Code requires the trial court in a divorce proceeding to “order a division of
the estate of the parties in a manner that the court deems just and right,
having due regard for the rights of each party and any children of the
marriage.”  Tex. Fam. Code § 7.001.  We review a trial court’s division of
property under an abuse of discretion standard.  Swaab v. Swaab, 282
S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2008, pet. dism’d w.o.j.).  A
trial court has wide discretion in making a just and right division.  Walston
v. Walston, 119 S.W.3d 435, 438 (Tex. App.—Waco 2003, no pet.) (citing Cockerham
v. Cockerham, 527 S.W.2d 162, 173 (Tex. 1975)).  To convince an appellate
court to disturb a trial court’s property division, an appellant must show that
the court below clearly abused its discretion by a division or an order that is
manifestly unjust and unfair.  Sharma v. Routh, 302 S.W.3d 355, 360
(Tex. App.—Houston [14th Dist.] 2009, no pet.).[3] 
Assessments of the legal and factual sufficiency of the evidence are not
independent grounds for reversal, but they are relevant factors in assessing
whether the trial court abused its discretion.  Id.

The value of community assets is generally determined
as of the date of divorce or as close to that date as possible.  Van Heerden
v. Van Heerden, 321 S.W.3d 869, 880 (Tex. App.—Houston [14th Dist.] 2010, no
pet.).  If an appellate court determines that there is reversible error
affecting the “just and right” division of the community estate, the court must
remand the entire community estate for a new division.  Jacobs v. Jacobs,
687 S.W.2d 731, 733 (Tex. 1985); Fischer-Stoker v. Stoker, 174 S.W.3d
272, 282 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

B.  Chase Bank Account

            In the decree,
the court awarded Guillermo the entirety of a business checking account at
Chase Bank.  Marita’s inventory and proposed division of property indicated
that this account contained a balance of $15,651.18.  Guillermo complains on
appeal that the documentation Marita provided to support this number, an
account statement from Chase, was dated almost six months prior to the date of
the default judgment hearing.  The statement was dated March 31, 2009, and the
hearing occurred on September 25, 2009.  According to Guillermo, the staleness
of this evidence prevented the trial court from effecting a just and right
division of the marital estate.

As mentioned above, the value of community assets
should generally be determined as of the date of divorce or as close to that
date as possible.  See Van Heerden, 321 S.W.3d at 880.  That does not
necessarily mean, however, that the trial court could not use figures from a
six-month-old statement when that was the best evidence presented to the court
regarding that account.  Despite being served with the lawsuit, Guillermo did
not appear and present his own evidence.  Had he participated in the
proceedings, he could have presented a more contemporaneous statement.  The
six-month gap by itself did not render the evidence insufficient to support the
trial court’s assessment of value in the Chase checking account and did not
render the court’s division of property manifestly unjust and unfair.  Cf.
Handley v. Handley, 122 S.W.3d 904, 908 (Tex. App.—Corpus Christi 2003,
no pet.) (finding no abuse of discretion where court adopted figures from
appraisal performed three months prior to trial); Phillips v. Phillips,
75 S.W.3d 564, 574 (Tex. App.—Beaumont 2002, no pet.) (finding no abuse of
discretion where trial court used appraisal done eight months before trial). 
We find no merit in Guillermo’s first contention.[4]

 

C.  Bank of America Account

            Guillermo next
contends that the trial court erred in calculating the value of a Bank of
America business checking account.  However, this argument appears premised on
a misreading of the court’s decree.

In one of Marita’s trial exhibits, the proposed division
of property, she valued the contents of the Bank of America account at
$5,182.33 and proposed awarding $5,000 of that amount to Guillermo and $182.33
to herself.  Another exhibit, which included her inventory and an attached
statement for the account, showed a balance of $182.33 as of June 18, 2009. 
Guillermo contends that this discrepancy means that he did not receive $5,000
that the trial court intended to award to him and, therefore, the trial court’s
intended percentage division of the marital estate was thwarted.  The trial
court’s final decree, however, awarded the entirety of the account’s contents
to Marita with no mention of the dollar amount therein.  Stated conversely, no
portion of that account was awarded to Guillermo.  Consequently, his argument
that the trial court intended to award him $5,000 that did not actually exist
in the account is without support in the decree.[5]

D.  Closing Costs

            Guillermo
additionally contends that the trial court abused its discretion in including
closing costs in deriving a value for the parties’ family home, which was
awarded to Marita.  In her inventory, proposed division of property, and
testimony, Marita explained that she derived a value for the parties’ home by
taking the fair market value, as determined from the Harris County Tax
Appraisal District ($458,107), and subtracting from that the amount owed on the
mortgage (157,594.29) and closing costs of 8 percent ($36,645.56), for a total
asset value of $263,867.15.

Guillermo appears to argue that in the absence of
evidence that Marita was planning to sell the house, the trial court should not
have included closing costs in valuing the property.  There are, however,
several problems with this assertion.  To begin with, the trial court’s final
decree awarded the residence to Marita with no mention of its value. It is not
clear from the record whether the court subtracted closing costs. Also, since Guillermo
did not participate in the proceedings below, he was unable to make, and did
not make, any objection to the method of valuation used.  Therefore, such
argument is waived.  See Houston R.E. Income Props. XV, Ltd. v. Waller Cnty.
Appraisal Dist., 123 S.W.3d 859, 862-63 (Tex. App.—Houston [1st Dist.] 2003,
no pet.) (finding appellate argument regarding reliability of method used for
valuing property was waived by failure to raise it in the trial court); Olson
v. Harris Cnty., 807 S.W.2d 594, 596 (Tex. App.—Houston [1st Dist.] 1990,
writ denied) (finding objection that witness did not use proper method for
estimating market value of property was waived by failure to timely assert it).

            Furthermore, even
on appeal, Guillermo provides no authority and no more than a conclusory
argument that the method of valuation was improper or that evidence of a
present intention to sell the property was required.  We decline to make his
argument for him.  See Tex. R. App. P. 38.1(i) (requiring that an
appellant’s brief “contain a clear and concise argument for the contentions
made, with appropriate citations to authorities and to the record”); Brown
v. Green, 302 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2009, no pet.)
(declining to expand on party’s conclusory arguments).  Consequently, we find
no merit in Guillermo’s contention regarding closing costs.[6]

 

E.  Federal Income Tax Returns

            Lastly, Guillermo
contends that the trial court erred in dividing the community estate in the
absence of evidence establishing values for the parties’ tax debt for 2008 and
2009.  In its decree, the court ordered the parties to file separate returns
for those years.  Marita testified that the parties’ 2008 tax return had not
been prepared and filed by the time of the hearing because she and the parties’
accountant needed information from Guillermo and he was not communicating with
her.  She requested that the court order each party to prepare and file separate
2008 and 2009 federal income tax returns, and the court did so in the decree.

In support of his position that the trial court could
not have properly divided the community estate without evidence establishing
values for the tax returns, Guillermo recites only the general proposition that
a trial court should have evidence before it of all of the parties’ property in
order to make a just and right division.  See Finn v. Finn, 658 S.W.2d
735, 747 (Tex. App.—Dallas 1983, writ ref’d n.r.e.).  Guillermo does not cite
any cases, and our research has not revealed any, wherein a court has held that
a community estate could not be divided where sums certain were not established
for tax liabilities.[7] 
However, there are Texas cases in which courts appropriately assigned tax
liability to one party or the other without knowing the exact amount of that
liability.  See Kimsey v. Kimsey, 965 S.W.2d 690, 695-96 (Tex. App.—El
Paso 1998, pet. denied) (finding no manifest abuse of discretion where trial
court divided tax liability equally between parties despite no evidence of amount
of potential tax liability, but remanding in part because court failed to
specify whether parties were to file jointly or separately); Mullins v.
Mullins, 785 S.W.2d 5, 7-8 (Tex. App.—Fort Worth 1990, no writ) (holding
trial court acted within its discretion in holding husband responsible for potential
income tax liability incurred during marriage); see also Young v. Young,
168 S.W.3d 276, 286 (Tex. App.—Dallas 2005, no pet.) (holding trial court did
not err in assigning responsibility of couples’ income tax liability to husband
where evidence indicated he had failed to report certain income); Benedict
v. Benedict, 542 S.W.2d 692, 698 (Tex. App.—Fort Worth 1976, writ dism’d) (finding
trial court acted within its authority in ordering husband responsible for
entire estimated tax liability where he had failed to file tax returns for
several years).  Consequently, Guillermo has not demonstrated that the trial
court abused its discretion in dividing the community estate without evidence
establishing specific amounts for the parties’ 2008 and 2009 tax liabilities.[8]  Based on
the foregoing analysis, we overrule Guillermo’s sole issue challenging the
final decree of divorce.

III.  Challenge to Amended QDRO

            In his other
appeal, Guillermo challenges the trial court’s issuance of an amended QDRO
governing transfer of funds from the Prudential retirement account in his
name.  As mentioned above, both the original and amended QDRO named the child
of the marriage as the “Alternate Payee,” and the amended QDRO expressly made
Guillermo liable for any income taxes resulting from the transfer.  In a single
issue, Guillermo contends that the amended QDRO was void because it modified
the division of property set forth in the divorce decree by (1) listing the
child as Alternate Payee rather than Marita, (2) making Guillermo liable for
the taxes rather than Marita, and (3) potentially awarding the remainder of the
funds to Marita in the event the child were to die before distribution of all
funds to him.

A.  Governing Law

After a trial court issues a divorce decree, it
generally retains continuing subject-matter jurisdiction to enforce and to
clarify the property division contained with the decree.  See Tex. Fam.
Code §§ 9.002, 9.008; In re Provine, 312 S.W.3d 824, 829-30 (Tex.
App.—Houston [1st Dist.] 2009, no pet.).  After its plenary power expires,
however, the court may not alter, amend, or modify the substantive division of property
in the decree.  Tex. Fam. Code § 9.007; Shanks v. Treadway, 110 S.W.3d
444, 449 (Tex. 2003); In re Provine, 312 S.W.3d at 829-30. Guillermo
specifically contends here that the trial court’s issuance of the amended QDRO
violated section 9.007 of the Texas Family Code, which provides as follows:

§ 9.007. Limitation on Power of Court to Enforce

(a) A court may not amend, modify,
alter, or change the division of property made or approved in the decree of
divorce or annulment.  An order to enforce the division is limited to an order
to assist in the implementation of or to clarify the prior order and may not
alter or change the substantive division of property.

(b) An order under this section
that amends, modifies, alters, or changes the actual, substantive division of
property made or approved in a final decree of divorce or annulment is beyond
the power of the divorce court and is unenforceable.

. . . .     

Tex. Fam. Code § 9.007.

The type of order in question here, a QDRO, is a species
of post-divorce enforcement order.  Gainous v. Gainous, 219 S.W.3d 97,
107 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing Shanks,
110 S.W.3d at 449, et al.).  The purpose of a QDRO is to create or recognize an
alternate payee’s right, or to assign an alternate payee the right, to receive
all or a portion of the benefits payable to a participant under a retirement
plan.  26 U.S.C. § 414(p)(1)(A); 29 U.S.C. § 1056(d)(3)(B)(i).[9]  Generally,
it is limited to orders under State family law relating “to the provision of
child support, alimony payments, or marital property rights to a spouse, former
spouse, child, or other dependent of a [retirement plan] participant.”  26
U.S.C. § 414(p)(1)(B); 29 U.S.C. § 1056(d)(3)(B)(ii).  “As with any
post-divorce enforcement or clarification order, a QDRO may not amend, modify,
alter, or change the division of property made or approved in the decree of
divorce or annulment.”  Gainous, 219 S.W.3d at 107 (citing Shanks,
110 S.W.3d at 449, et al.).

B.  Alternate Payee

Guillermo first contends that the amended QDRO is void
because the trial court erroneously made the child of the marriage the
alternate payee in the amended QDRO, while the decree named Marita as the
alternate payee.  In doing so, according to Guillermo, the trial court changed
the substantive division of property in the decree in violation of Family Code section
9.007.  In the decree, however, the court did not simply award the funds from
the Prudential account to Marita; the court ordered transfer of the funds in
the decree as lump sum child support.  The amended QDRO, in fact, does the same
thing, expressly stating that the amounts to be transferred were “in the nature
of child support.”  Both documents make it clear that the funds are child
support.  Thus, the amended QDRO does not change the substantive division of property
contained in the decree in violation of section 9.007.

Guillermo nonetheless emphasizes that the amended QDRO
names the child as alternate payee instead of Marita.  This designation,
however, is in keeping with the statutory framework establishing the use of
QDROs as methods for transferring funds from retirement plans incident to
divorce.  As described above, the relevant sections of the United States Code
state that QDROs relate “to the provision of child support, alimony payments,
or marital property rights to a spouse, former spouse, child, or other
dependent of a [retirement plan] participant.”  26 U.S.C. § 414(p)(1)(B); 29
U.S.C. § 1056(d)(3)(B)(ii).  Further, “[t]he term “alternate payee” means any
spouse, former spouse, child, or other dependent of a participant who is
recognized by a domestic relations order as having a right to receive all, or a
portion of, the benefits payable under a plan with respect to such participant.” 
26 U.S.C. § 414(p)(8); 29 U.S.C. § 1056(d)(3)(K).  The language of these
provisions supports the conclusion that the designated alternate payee for a
transfer of funds as child support should be the child for whose benefit the
funds are intended.   Since a child would not be entitled to alimony or marital
property rights, the only reason a child could be an alternative payee under
the provisions would be for the receipt of child support.  As will be discussed
below, this reading is consistent with the laws governing taxation of child
support amounts and those pertaining to retirement plan transfers pursuant to a
QDRO.  In short, the designation of the child as alternate payee in the amended
QDRO was proper and did not change the substantive division of property
contained in the decree.

C.  Tax Liability

Next, Guillermo asserts that the amended QDRO is void
because in issuing it, the trial court impermissibly altered who was
responsible for taxes on the transferred funds, thus effecting a change in the
substantive division of the property.  The decree itself, however, is silent as
to who was responsible for taxes on the lump sum child support.  Federal income
tax law specifically excludes amounts received as child support from the
taxable income of the receiving spouse.  26 U.S.C. § 71(c)(1).  There is no similar
exclusion of child support from the payor’s taxable income.  Thus, pursuant to
the Internal Revenue Code, Guillermo would be responsible for any taxes on the
child support payment.

 

 

Furthermore, making the child the alternate payee in
the amended QDRO ensured that Guillermo was responsible for any taxes.  Early
distributions from a retirement plan may be subject to income tax to be paid by
the distributee.  See 26 U.S.C. § 402(a), (b)(2); Smith ex rel.
Estate of Smith v. U.S., 391 F.3d 621, 626 (5th Cir. 2004).  If the
recipient of the distribution is an alternate payee spouse or former spouse
under a QDRO, the recipient is treated as the distributee and is liable for any
tax.  See 26 U.S.C. § 402(a), (e)(1)(A); Swoboda v. Swoboda, 17
S.W.3d 276, 280 (Tex. App.—Corpus Christi 2000, no pet.); I.R.S., Dep’t of the
Treasury, Publication 575, Pension and Annuity Income 4 (2010).  However, if
the alternate payee is a child or other dependent of the retirement plan participant,
then the participant is deemed to be the distributee and, thus, is responsible
for any taxes.  See I.R.S., Publication 575, at 4.[10]  Had
Marita been named the alternate payee in the amended QDRO, it might have been
unclear who was responsible for any taxes; she would have been liable for taxes
as distributee of the funds but immune from taxes because the funds were designated
as child support.  By making the child the alternate payee, the trial court
avoided this potential uncertainty.  The amended QDRO is consistent with the
decree.

D.  Contingent Disbursement

Lastly, Guillermo argues that issuance of the QDRO effected
a change in the division of property because in it the trial court awarded the
remainder of the funds to Marita in the event the child were to die before
distribution of all funds to him.  The amended QDRO explicitly provides that:

If the [child] should die prior to receiving the full
amount of the benefit assigned to him . . . his beneficiary(ies), as designated
on the appropriate form provided by the Plan Administrator (or in the absence
of such designation, the beneficiary determined in accordance with the
provisions of the Plan) shall be paid a lump sum cash payment in an amount
equal to the entire ba1ance of . . . the amount assigned to the Alternate Payee
. . . .

Guillermo has not, however,
provided any evidence regarding whether anyone has been named the child’s
beneficiary under the QDRO or the retirement plan.

Moreover, even if Marita was named sole beneficiary,
it would not affect a change in the property division under the decree.  The
decree states that in the event of certain contingencies, including the
possibility of the child’s untimely death, Marita must repay one-half of any remaining
child support funds to Guillermo.[11] 
Thus, the potential distribution of remaining funds to Marita as beneficiary
under the QDRO would actually aid implementation of the decree’s requirement
that she then give half to Guillermo.

            The amended QDRO
issued by the trial court merely assisted in the implementation of the trial
court’s final decree of divorce and did not impermissibly amend, modify, or
change the division of property contained in the decree.  Accordingly, the
order did not violate Family Code section 9.007.  We overrule Guillermo’s sole
issue in his second appeal.  

IV.  Conclusion

Having overruled Guillermo’s two issues in these
companion appeals, we affirm the trial court’s final decree of divorce as well
as its amended QDRO.

 

                                                                        

                                                                        /s/        Martha
Hill Jamison

                                                                                    Justice

 

Panel consists of Justices Brown, Boyce,
and Jamison.

 









[1]
A QDRO is not required for transferring funds from an IRA pursuant to divorce,
so there was no need for a QDRO regarding the TD Ameritrade account.  See
26 U.S.C. § 408(d)(6).





[2]
There is no explanation in the record or by the parties as to why no amended QDRO
was filed respecting the ING retirement account.





[3]
As will become apparent, Guillermo does not challenge the trial court’s
decision to award an unequal division of the marital estate but instead
challenges whether the court below had adequate information on which to base
its property division. 





[4]
The case Guillermo primarily relies upon, Mata v. Mata, 710 S.W.2d 756
(Tex. App.—Corpus Christi 1986, no writ), is distinguishable.  In Mata,
the court of appeals stated that the trial court should have divided the money
accounts as of the date of the final decree and not based on a date over three
months earlier.  Id. at 759.  The court reversed the final decree,
however, due to numerous valuation errors, which were unsupported by the
uncontroverted evidence and which the court held rendered the division unfair,
unjust, and inequitable.  Id. at 760.  Mata, therefore, does not
clearly support the notion that use of a six-month-old bank statement, standing
alone, renders a decree unjust and unfair.

Guillermo also cites the Corpus Christi court’s
unpublished opinion in Suarez v. Suarez, No. 13-04-00108-CV, 2006 WL
1194960 (Tex. App.—Corpus Christi May 4, 2006, no pet.) (not designated for
publication).  The court reversed in Suarez in part because the only
evidence regarding certain assets in a post-answer default proceeding provided
values for dates more than four years and more than five years before the
hearing.  Id. at *2.  Other items listed as community assets had unknown
values.  Id. at *2 n.2.  It should also be noted that a dissenting
justice in Suarez considered the evidence sufficient to find that the
trial court did not err in its division of the property despite the rather
stale and incomplete evidence of value.  Id. at *6-7 (Castillo, J.,
concurring and dissenting).  We need not decide in the present case whether we
would agree with the Suarez majority or dissent on similar facts.  The
six-month-old evidence in the present case is qualitatively different than the
four-and-five-year-old, and otherwise nonexistent, evidence in Suarez.





[5]
At the conclusion of the default judgment hearing, the trial judge stated that
he found “the property division that [Marita]
requested supported by the exhibits the attorneys have prepared and submitted
to the Court and as specifically set out again in the proposed decree is fair
and reasonable and just to both parties.”  The trial court therefore clearly
intended to grant the division of property contained in the proposed decree, as
supported by the exhibits introduced during the hearing.  To the extent there
was a discrepancy in the exhibits regarding the contents of the Bank of America
account, the court resolved the discrepancy by awarding the entirety of the
contents to Marita.





[6]
We additionally note that even if Guillermo had established that an intent to
sell was required before closing costs could be included in the property
valuation, the trial court could have inferred such intent from Marita’s
testimony regarding closing costs.





[7]
Taking Guillermo’s position to its logical conclusion, if the court could not
effect a property division without a specific value for the tax liability, he
could indefinitely forestall division of the community estate by failing to
cooperate in the preparation of the tax returns.





[8]
In his reply brief, Guillermo cites Grossnickle v. Grossnickle, in which
the court stated that “where the question of future taxation arises, a trial
court errs in allowing a credit for a future tax figure that must be derived
from speculation or surmise.”  935 S.W.2d 830, 847 (Tex. App.—Texarkana 1996,
writ denied).  But as the First Court of Appeals recently recognized, section
7.008 of the Family Code now expressly authorizes courts to take into
consideration whether a particular asset will be subject to taxation in the
future.  Tex. Fam. Code § 7.008; Corrick v. Corrick, 01-09-00656-CV,
2011 WL 664007, at *5 (Tex. App.—Houston [1st Dist.] Feb. 17, 2011, no pet. h.).

To the extent the analysis in Grossnickle still
might be valid, it would have no application here.  Guillermo and Marita
already had incurred income taxes for 2008 at the time of divorce, so
allocation did not violate the logic of Grossnickle.  Furthermore, the
parties could not legally have filed a joint return for 2009, the year in which
their divorce became final, and could not have known the total tax liability
before the end of the year.  See Kimsey, 965 S.W.2d at 696 (citing 26
U.S.C. § 7703(a)).





[9]
The two code sections in question, 26 U.S.C. § 414 and 29 U.S.C. § 1056,
contain several identical provisions relevant to this case. 





[10]
Section 402(a) of the Internal Revenue Code provides that “any amount actually
distributed to any distributee [from a retirement plan] shall be taxable to the
distributee.”  26 U.S.C. § 402(a).  Section 414(p)(8) permits a spouse, former
spouse, child, or other dependent of a participant to receive distributions
pursuant to a QDRO as an “alternate payee.”  Id. § 414(p)(8).  Section
402(e)(1)(A) states that “[f]or purposes of subsection (a) . . . an alternate
payee who is the spouse or former spouse of the participant shall be treated as
the distributee of any distribution or payment made to the alternate payee
under a [QDRO].”  Id. § 402(e)(1)(A).  By expressly providing that when
a spouse or former spouse is the alternate payee, the spouse or former spouse
is deemed the distributee and liable for taxes on the distribution, and not
stating the same for a child or other dependent as alternate payee, congress
expressed an intent that the plan participant remain the distributee, and be
liable for any taxes, when the alternate payee is that participant’s child or
other dependent.  See Stephen J. Blaylock, Retirement Benefits:  Tax
Ramifications Reviewed and Applied, J. Am. Acad. Matrim. Law. 1, 4 &
n.18 (1993); Peter C. Langdon, The Disposition of Retirement Plan Assets in
Divorce Proceedings Under Nebraska and Federal Law, Creighton L. Rev. 741,
754-55 (1990).





[11] The decree
specifically states as follows:

In the event that a balance of the lump
sum child support remains under [Marita]’s exclusive use and possession after
the earliest occurrence of the one [sic] of contingencies above, then IT IS
ORDERED that [Marita] shall pay to [Guillermo] one-half of the remaining
balance of lump sum child support.